**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 98-4575

CHARLIE LOSSIAH, a/k/a Bowser,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Bryson City.
Lacy H. Thornburg, District Judge.
(CR-97-276)

Submitted: October 20, 1999

Decided: November 10, 1999

Before MICHAEL, MOTZ, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Roy H. Patton, Jr., KILLIAN, KERSTEN, PATTON & ELLIS, P.A.,
Waynesville, North Carolina, for Appellant. Deborah A. Ausburn,
OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North
Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Charlie Lossiah appeals his conviction on two counts of engaging in a sexual act with a person under age twelve within Indian country, 18 U.S.C.A. § 2241(c) (West Supp. 1999). Because none of the three issues raised on appeal has merit, we affirm.

I

Lossiah's niece informed a school counselor that her uncle had engaged in inappropriate behavior with her. Ultimately, because the acts allegedly occurred on the Cherokee Indian reservation, the matter was referred to the FBI for investigation. Special Agent Russell went to Lossiah's home, where Lossiah confessed to having sexual contact with his niece. Lossiah moved to suppress the confession. Following a hearing at which Russell, Lossiah, and a psychologist who evaluated Lossiah at FCI Petersburg testified, the district court made certain findings of fact. On the basis of those facts, the district court concluded that Lossiah's confession was voluntary and denied the motion to suppress.

Lossiah contends that his confession was involuntary and that its admission at trial violated his Fifth Amendment right not to be a witness against himself. We review de novo whether a confession was voluntary, "accepting `the district court's findings of fact on the circumstances surrounding the confession . . . unless[those findings are] clearly erroneous.'" United States v. Braxton , 112 F.3d 777, 781 (4th Cir. 1997) (quoting United States v. Pelton, 835 F.2d 1067, 1072 (4th Cir. 1987)), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3260 (U.S. Oct. 6, 1999) (No. 97-5073). In making our ultimate determination of voluntariness, we look to the totality of the circumstances surrounding the confession. The critical issue is "whether[the] defendant's will has been overborne or his capacity for self-determination critically impaired." Braxton, 112 F.3d at 781.

The district court's factual findings were fully supported by testimony at the suppression hearing and were not clearly erroneous. Rus-

2

sell testified that he went to Lossiah's home in an unmarked car. He was wearing civilian clothes and, although he was armed, his weapon was not visible. Russell showed Lossiah his badge and credentials and informed him that he was investigating a report of child sexual abuse. Russell was aware that Lossiah, who was nineteen, had a low intellect. He therefore asked Lossiah direct, simple questions. Only once during the interview that followed did Lossiah appear confused, but when Russell explained what he was asking, the confusion vanished.

Russell asked Lossiah whether he would talk to him. When Lossiah agreed, Russell asked whether they could talk at that time. Lossiah said yes, and suggested that they hold their conversation seated in lawn chairs outdoors. At no time did Russell tell Lossiah that he was under arrest or not free to leave. Lossiah never asked Russell to leave or seemed uncomfortable, except when he admitted that he had touched his niece inappropriately. Russell testified that he had no doubt that Lossiah understood the questions that were asked. The interview lasted between an hour and an hour and a half. Although Lossiah initially denied having any sexual contact with the victim, he ultimately confessed and wrote a brief statement apologizing to his niece for what he had done.

Marcus Forbes, the psychologist who headed the team that evaluated Lossiah at FCI Petersburg, testified at the hearing that Lossiah had an IQ of sixty-four, which meant that he was mildly mentally retarded. Lossiah has the reading ability of a second or third grade student, and a math ability of a fifth grade student. Forbes stated that Lossiah would have understood that he could have stopped his conversation with Russell. Although Lossiah is more susceptible than a person of normal intellect would be to suggestion, he could have made his own determination as to what to say to Russell. Forbes concluded that the conversation would not have overpowered Lossiah.

These facts demonstrate that Lossiah's confession was voluntary. Lossiah concedes in his brief that there is no evidence of oppressive police conduct. The focus instead is on Lossiah's limited mental faculties. However, a defendant's individual characteristics alone are insufficient by themselves to render a confession involuntary absent circumstances that demonstrate some form of official coercion. See

3

Watson v. Detella, 122 F.3d 450, 453 (7th Cir. 1997). Here, there simply was no coercion on SA Russell's part.

Lossiah also observes that Forbes initially wondered whether Lossiah was competent to stand trial and suggests that this casts doubt on the voluntariness of the confession. We note simply that Forbes never concluded that Lossiah was incompetent to stand trial. More importantly, Forbes expressed no doubt at the suppression hearing that Lossiah was rational and logical during the interview with Russell, that he could make his own decisions as to what to say, and that the confession was not the result of a law enforcement officer's overpowering a person who was more susceptible than the normal individual to suggestion.

II

The district court denied Lossiah's motion for appointment of a private psychologist to assist him in determining both whether his confession was voluntary and whether he was competent to stand trial. If a defendant's sanity at the time of the offense is at issue, the defendant is entitled to a psychiatric examination at government expense. See Ake v. Oklahoma, 470 U.S. 68, 83 (1985). It is unclear that the rule of Ake extends to give an accused the right to an expert to determine competency to stand trial. See Bell v. Evatt, 72 F.3d 421, 431 (4th Cir. 1995). In any event, "Ake reflects primarily a concern with ensuring a defendant access to a psychiatrist or psychologist, not with guaranteeing a particular substantive result." Wilson v. Greene, 155 F.3d 396, 401 (4th Cir.), cert. denied, ___ U.S. ___, 67 U.S.L.W. 3361 (U.S. Nov. 16, 1998) (No. 98-6796).

Here, Lossiah had access to a psychologist: he was evaluated by a team at FCI Petersburg led by Dr. Forbes; he questioned Dr. Forbes at the suppression hearing; and he called Dr. Forbes as a defense witness at trial. He was not entitled to another expert evaluation at government expense. The district court did not abuse its discretion in denying his motion.

III

Finally, Lossiah argues that the district court erred when it denied his motion for a continuance, in which he claimed that the one month

4

between his competency hearing and his trial was not sufficient time for defense counsel to prepare. Lossiah fails to demonstrate how his case was prejudiced by the district court's ruling. Therefore, he cannot establish that the district court abused its discretion in denying the motion. See United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995).

IV

We accordingly affirm the conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED