Filed:  July 26, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 99-6644(L)
(CR-97-94)

United States of America,

Plaintiff - Appellee,

versus

Pablo Gonzalez Arias, et al.,

Defendants - Appellants.

O R D E R

The court amends its opinion filed July 10, 2000, as follows:

On page 11, second full paragraph, line 9 -- the comma after the word "witnesses" is changed to a colon.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 99-6644

PABLO GONZALEZ ARIAS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 99-6645

ANGEL D. BELASQUEZ,
Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of West Virginia, at Huntington.
Joseph Robert Goodwin, District Judge.
(CR-97-94)

Argued: May 4, 2000

Decided: July 10, 2000

Before WIDENER, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Edward Henry Weis, First Assistant Federal Public
Defender, Charleston, West Virginia, for Appellant Belasquez; Debra

C. Price, Charleston, West Virginia, for Appellant Arias. Michael Lee Keller, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** Rebecca A. Betts, United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On October 1, 1997, a jury convicted Appellants Pablo Arias and Angel Belasquez of conspiracy to distribute and to possess with the intent to distribute cocaine, in violation of 21 U.S.C.A. § 846 (West 1999), and related violations of 21 U.S.C.A. § 841 (West 1999). In an opinion dated April 9, 1999, this Court affirmed the convictions and sentences. See United States v. Arias, 176 F.3d 476, 1999 WL 198866 (4th Cir. Apr. 9, 1999) (unpublished). While their initial appeal was pending in this Court, Appellants filed motions for a new trial in which they contended that the Government knowingly used perjurious testimony at Appellants' trial and failed to disclose material evidence favorable to Appellants. After we issued our April 9 decision, the United States District Court for the Southern District of West Virginia denied Appellants' motions for a new trial in an order filed April 21, 1999. Appellants now appeal from the district court's denial of their motions. Because we conclude that the district court did not err in denying the motions for a new trial, we affirm.

I.

On June 22, 1997, police arrested Appellants at a motel near Huntington, West Virginia following a controlled drug buy carried out with the help of a cooperating individual, Paul Michael Moore. Fol-

2

lowing their arrest, Appellants were charged with three counts of violating 21 U.S.C.A. §§ 841(a)(1), 846 (West 1999).**1**

Prior to trial, Appellants filed a motion to suppress the evidence, including six ounces of cocaine, recovered during the warrantless search of the motel room in the June 22 sting. The district court granted the suppression motion. The district court also heard an oral motion in limine in which Appellants sought assurance that if they impeached Moore and Lieutenant Wendell Adkins at trial with inconsistent statements these men made concerning the warrantless June 22 search during the suppression hearing and before the grand jury, such impeachment efforts would not thereby open the door to allow the introduction of the suppressed evidence. The district court withheld ruling on the motion, but indicated that it might allow admission of the suppressed evidence if Appellants pursued this strategy. Appellants did not want to risk the admission of this evidence and opted not to pursue this strategy.**2**

At Appellants' trial, Moore testified to previous drug dealings with Appellants in Florida, as well as to the events of June 22. Moore testified that he was wearing a recording device during the controlled drug buy from Appellants on June 22, and the tape from the recording device supporting Moore's account was played for the jury. While cross-examining Moore, defense counsel were able to impeach him by noting that he had been involved in using and selling drugs, that he had pleaded guilty to drug charges, that he was testifying in an effort to help himself in relation to a DUI charge he received while on probation, and that he had lied to his friend Arias on at least one occasion. The Government also presented the testimony of two of Appellants' co-defendants, Woody Adkins and Dale Lyons, who, as part of their plea agreements with the Government, testified about their 1997 cocaine purchases from Appellants and Appellants' additional efforts to purchase cocaine for them. In our previous opinion affirming Appellants' convictions and sentences, we indicated that at

_____

**1** Appellants were named in three counts of an eight-count indictment. The indictment covered five defendants in total. The other three co-defendants pleaded guilty and entered plea agreements with the Government.

**2** As it turned out, Lieutenant Adkins did not testify at Appellants' trial.

3

trial the Government "rel[ied] chiefly upon the testimony of Moore and of Woody Adkins and Dale Lyons." United States v. Arias, 176 F.3d 476, 1999 WL 198866, at *1 (4th Cir. Apr. 9, 1999) (unpublished).

In addition to the testimony of these three individuals, the Government also presented testimony from a fourth individual, Delbert Robert Jobe. Jobe worked as a paid cooperating individual with the Huntington Drug Task Force (the Drug Task Force), purchasing drugs and then turning them over to the Drug Task Force. Jobe testified to having purchased cocaine from Lyons and Woody Adkins in controlled buys. Jobe also testified that Lyons told him that the drugs came from a "Cuban connection" in Florida. Jobe's testimony primarily served to establish the chain of custody of drugs introduced at trial.[3] Jobe further testified that he had seen Arias with Lyons and Woody Adkins in a West Virginia bar, but stated that he did not have any direct dealings with Appellants. Because of Jobe's limited importance at trial, we did not mention his role in our prior ruling affirming Appellants' convictions and sentences.

During the cross-examination of Jobe, defense counsel were able to impeach him by showing that he had been involved in the drug underworld and that he had a criminal background. In addition, the following exchanges also took place:

> Q. Mr. Jobe, when you first became an informant, you became an informant first because you were someone who knew where to get drugs; isn't that right?
>
> A. Yes, sir.
>
> Q. You'd been using them?
>
> A. Yes, sir.

(J.A. at 376.)

_____

[3] The Government's theory was that Jobe purchased drugs from Woody Adkins and Lyons that they had in turn purchased from Appellants.

4

Q. There's competition for customers. And you would frequently buy eight-balls; is that correct?

A. Yes, sir, for the biggest part.

Q. And your understanding of an eight-ball is that that's an eighth of an ounce of cocaine, right?

A. Yes, sir, I think. I'm not -- I had a drug problem before, but it was not a cocaine problem.

Q. Right.

A. So cocaine was not my thing that I dealt with. So, yes, I guess that's the exact weight or -- do you understand what I'm saying?

Q. I understand what you're saying. You understood that you were buying an eighth of an ounce of cocaine, right?

A. Yes, sir.

(J.A. at 379-80.)

After Appellants were convicted on the three counts with which they were charged and sentenced, and while their appeal was pending in this Court, some disturbing facts began to come to light. On February 13, 1998, Jobe was found dead at his residence, the apparent victim of a cocaine overdose. A subsequent FBI investigation into Jobe's death revealed troubling evidence of an unseemly relationship between Jobe and members of the Drug Task Force. Specifically, it appeared that drug evidence had been improperly stored in an unlocked filing cabinet within the task force office and that Jobe had been allowed access to the office on several occasions. There was also evidence that Jobe had been left alone in the room where the drug evidence was improperly stored. Some drug evidence from the task force office was found in Jobe's home at the time of his death, although none of the drug evidence particular to Appellants' case was discovered or otherwise believed to have ever been tainted. In addition, a

5

previously undisclosed memorandum of an interview with Jobe conducted by Lieutenant Adkins on January 14, 1997, indicated that Jobe's involvement with cocaine was more extensive than that suggested by his testimony at Appellants' trial and that he was a known cocaine abuser. An FBI interview with Lieutenant Adkins also revealed that on one particular occasion Jobe immediately reported to members of the Drug Task Force that "he and the individuals he had purchased drugs from had used some of the crack after the purchase had been completed." (J.A. at 510-11.)

Based upon this newly discovered evidence, Appellants each moved for new a trial[4] on the grounds that: (1) the Government knowingly provided perjurious testimony in the form of Jobe's testimony that he did not have a cocaine problem and that he was relatively unfamiliar with the weight of an "eight-ball" quantity of cocaine because cocaine was not what he "dealt with"; and (2) the Government failed to disclose evidence, favorable to Appellants, that the members of the Drug Task Force improperly allowed Jobe, a known cocaine user, access to the task force office where drug evidence was stored in an unlocked cabinet. The district court denied the motions, concluding that there was not a reasonable likelihood that Jobe's purportedly perjurious testimony affected the jury's verdict and that the undisclosed evidence was not material to Appellants' case.

On appeal, Appellants argue that the jury's verdict could have been affected by Jobe's purportedly false testimony, or at least by the cumulative effect of this testimony and the evidence of the questionable relationship between Jobe and the Drug Task Force. Appellants also claim that had they known of this improper relationship, they would have adopted an "attack" strategy. According to Appellants, they would have sought to undermine the integrity of the Drug Task Force if they had been armed with this new information; they also

_____

[4] Each Appellant styled his motion as a "Motion for a New Trial and Attacking Sentence," brought pursuant to Fed. R. Crim. P. 33 and 28 U.S.C.A. § 2255 (West Supp. 2000). (J.A. at 431, 494.) The district court, however, considered the motions only as motions for a new trial under Fed. R. Crim. P. 33. Because of the district court's treatment of the motions, we, too, consider the motions as Rule 33 motions for a new trial.

would have sought to impeach Moore with his inconsistent statements before the grand jury and at the suppression hearing; and they would have called Lieutenant Adkins to show that he, too, provided inconsistent statements at these two hearings. For the reasons that follow, we agree with the district court that a new trial was not warranted in this case.

II.

Under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, a prosecutor's failure to disclose "evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87; see also Kyles v. Whitley, 514 U.S. 419, 433 (1995) (noting that there is no distinction between situations in which an accused requests disclosure and situations in which an accused fails to make such a request). Evidence is favorable if it is exculpatory or if it could be used to impeach Government witnesses. See United States v. Ellis, 121 F.3d 908, 914 (4th Cir. 1997). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles, 514 U.S. at 433 (internal quotation marks omitted). "A reasonable probability of a different result is accordingly shown when the government's suppression undermines confidence in the outcome of the trial." Id. at 434 (internal quotation marks omitted). In addition to the prosecutor's obligation to disclose favorable evidence that meets this materiality standard, the prosecutor also may not knowingly introduce perjured testimony. See United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994). If the Government allows such perjured testimony to pass uncorrected, a new trial will be warranted when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976). Furthermore, prosecutors are responsible for disclosing so-called "Brady evidence" and for preventing their witnesses from providing perjurious testimony whenever one who is working on the Government's case knows of such evidence or testimony, even if the prosecutor does not herself have firsthand knowledge. See Strickler v. Greene, 527 U.S. 263, 280-81 (1999); Kyles, 514 U.S. at 437-38.

7

Ordinarily, a motion for a new trial based upon newly discovered evidence brought pursuant to Fed. R. Crim. P. 33 requires a defendant to show that: (1) the evidence has been discovered since the trial; (2) the moving party acted with the appropriate amount of diligence; (3) the evidence is not "merely cumulative or impeaching;" (4) the evidence is "material to the issues involved;" and (5) the evidence demonstrates "that, on a new trial, . . . [it] would probably produce an acquittal." United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993), aff'd, 511 U.S. 485 (1994). As indicated above, however, when a motion for new trial is based upon the theory that the newly discovered evidence is Brady material, a standard slightly more favorable to the defendant exists. First, evidence that is merely impeaching may support a new trial. See United States v. Bagley, 473 U.S. 667, 676 (1985); Ellis, 121 F.3d at 914. Second, rather than showing that the new evidence "would probably produce an acquittal," Custis, 988 F.2d at 1359, a defendant must show only that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," that is, "the government's evidentiary suppression undermines confidence in the outcome of the trial," Kyles, 514 U.S. at 433-34 (internal quotations marks omitted). When the alleged Brady violation is based upon the Government's knowing use of perjured testimony, an even more relaxed standard is applicable: a conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Agurs, 427 U.S. at 103 (emphases added). With these familiar principles in mind, we turn to the merits of Appellants' arguments.

III.

Appellants claim that the cumulative effect of the purportedly perjurious testimony of Jobe and the prosecution's nondisclosure of the questionable relationship between members of the Drug Task Force and Jobe leads to the conclusion that there is a reasonable likelihood that the jury's verdict could have been affected. Before considering the cumulative impact of this new evidence, we first will review each alleged violation.

A.

Appellants argue that Jobe, a known cocaine abuser, provided perjurious testimony when he testified that he was unsure how much an

8

"eight-ball" of cocaine weighed because he had not had a "cocaine problem" and that cocaine was not what he "dealt with." (J.A. at 379-80.) They further contend that Lieutenant Adkins knew that this testimony was false based upon his interview with Jobe, as commemorated in the January 14, 1997 memorandum, and that this knowledge is thereby imputed to the prosecution. If the Government knowingly used perjurious testimony -- by virtue of this small portion of testimony that Jobe spontaneously offered while being cross-examined -- Appellants would be entitled to a new trial if there is a reasonable likelihood that this testimony could have affected the jury's judgment. See United States v. Agurs, 427 U.S. 97, 103 (1976).

We conclude that Appellants are not entitled to a new trial based upon this testimony. Even if we assume, without deciding, that Jobe's unsolicited remarks about the extent of his past involvement with cocaine constituted perjury, it is clear to us that there is no reasonable likelihood that it could have affected the jury's verdict. Jobe was a minor witness used primarily to establish the chain of custody of drugs introduced at trial. Jobe did not testify to any direct dealings with Appellants; the extent of his testimony implicating Appellants was that he had seen Arias with Lyons and Woody Adkins at bars and that Lyons had once told him that his source of drugs was a "Cuban connection." (J.A. at 367.) The Government's case was in no way dependent upon Jobe's testimony. Appellants were convicted upon the strength of the testimony of Moore, Lyons, and Woody Adkins, all of whom testified to direct dealings with Appellants in drug transactions. Indeed, as we indicated in our opinion affirming Appellants' convictions and sentences, the Government "rel[ied] chiefly upon the testimony" of these three witnesses. United States v. Arias, 176 F.3d 476, 1999 WL 198866, at *1 (4th Cir. Apr. 9, 1999) (unpublished). In light of this other, more direct, evidence implicating Appellants, it is not reasonably likely that the jury could have been affected by Jobe's purportedly false testimony concerning his familiarity with cocaine and cocaine quantities. This information, whether true or untrue, simply had nothing to do with the jury's finding of guilt.[5]

_____

[5] Appellants also argue that because of Jobe's testimony indicating that he was unfamiliar with how much an "eight-ball" quantity was, they were unable to develop further through his testimony why records indi-

In addition, Appellants' counsel impeached Jobe on cross-examination by establishing his drug use and prior involvement in criminal activity. To the extent, therefore, that Appellants argue that they could have impeached Jobe based upon his purportedly false testimony, we note that it would have been somewhat cumulative of their other impeachment attempts.**6** In any event, we do not find any reasonable likelihood that further attacks on Jobe's credibility, given his exceptionally minor role at trial, could have altered the jury's verdict. See United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994) (explaining that "[e]ven if the false testimony relates only to the credibility of a Government witness and other evidence has called that witness' credibility into question, a conviction must be reversed when `there is any reasonable likelihood that the false testimony could have affected the judgment of the jury'" (quoting Agurs, 427 U.S. at 103)).

B.

Appellants also contend that the Government's failure to disclose the improper relationship that appears to have existed between Jobe and members of the Drug Task Force constituted a Brady violation and warrants a new trial. As explained above, the Government has a responsibility to disclose evidence favorable to an accused only if it

_____

cated that he had not received the full amount of cocaine that he was supposed to have purchased from Lyons and Woody Adkins. Contrary to Appellants' position, however, after Jobe hesitated about his knowledge of the weight of an "eight-ball," the following exchange took place: Q: "You understood that you were buying an eighth of an ounce of cocaine, right?"; A: "Yes, sir." (J.A. at 380). Jobe thus testified that he knew the weight of drugs he was supposed to be buying. Moreover, Appellants' counsel questioned Jobe about the amount of cocaine he received from Lyons and Woody Adkins, and Jobe confirmed that he consistently surrendered to the Drug Task Force less than the full amount of cocaine that Lyons and Woody Adkins represented they were selling to him.

**6** We noted in United States v. Hoyte, 51 F.3d 1239 (4th Cir. 1995), that undisclosed evidence suggesting that a prosecution witness made inconsistent statements "would not, within reasonable probability, have caused a different result" given that the witness was impeached in many other ways. Id. at 1243.

10

is material in that it undermines confidence in the trial's outcome. See Kyles v. Whitley, 514 U.S. 419, 434 (1995).

Appellants' central argument on this score is that had they known that members of the Drug Task Force allowed Jobe access to the task force office, at times without supervision, where quantities of drug evidence were kept in unlocked filing cabinets, they would have pursued a trial strategy attacking the integrity of the Drug Task Force. They also would have sought to impeach Moore with the inconsistencies in his statements before the grand jury and at the suppression hearing[7] and they would have called Lieutenant Adkins in an effort to show his similarly inconsistent statements. In other words, Appellants claim that with the benefit of this new information they would have opted for the very trial strategy that they originally chose not to pursue for fear of opening the door to the admission of the drug evidence improperly seized during the June 22 sting.

Even if we accept Appellants' somewhat dubious contention that this is the trial strategy that they would have employed, we nevertheless conclude that Appellants have failed to show that the nondisclosure of this evidence violates Brady. There is no suggestion that this evidence in any way exculpates Appellants because there is no clear indication that evidence related to Appellants' case was at all tainted. Furthermore, the fact that Jobe may have been allowed access to the task force office and the drug evidence contained therein does not undermine the testimony of the Government's main witnesses: Moore, Lyons, and Woody Adkins. No matter how much Appellants argue about using different trial strategies, the fact remains that the new evidence discovered in this case has nothing to do with the principal players or issues in their case. Considering this reality, we cannot escape the conclusion that the undisclosed evidence at issue was simply not material to Appellants' trial because its discovery does not

_____

[7] Because Appellants' counsel impeached Moore on other grounds, including his prior criminal activity, drug use, and his dishonesty toward Arias on at least one occasion, use of his inconsistent statements for impeachment purposes would have been merely cumulative. See United States v. Hoyte, 51 F.3d 1239, 1243 (4th Cir. 1995) (concluding that undisclosed evidence that could have been used only to further impeach an already-impeached Government witness did not require a new trial).

11

undermine our confidence in the trial's outcome. <u>See Kyles</u>, 514 U.S. at 434.

C.

Finally, Appellants primarily claim that a new trial is warranted based upon the cumulative effect of Jobe's purportedly perjurious testimony and the Government's failure to disclose the nature of the Drug Task Force's relationship with Jobe. As we indicated in <u>United States v. Ellis</u>, 121 F.3d 908 (4th Cir. 1997), after examining the undisclosed evidence item-by-item, we must evaluate the cumulative effect of all of the suppressed evidence to determine whether the evidence as a whole is material within the meaning of <u>Brady</u>. <u>See id.</u> at 916; <u>see Kyles</u>, 514 U.S. at 436-37. Having first considered the purportedly perjurious testimony and the undisclosed evidence each in isolation, and having concluded that neither was sufficiently material to constitute a <u>Brady</u> violation on its own, we now consider whether there is any reason to alter our materiality determinations based upon the combined effect of these allegations.**8**

We can find no such reason. Appellants first argue that the proper materiality standard to apply when considering these two aspects together is the lesser of the two standards, i.e., whether there is a reasonable likelihood that the testimony "could have affected the judgment of the jury," which is the standard used when analyzing a claim of the Government's knowing use of perjurious testimony. <u>See Agurs</u>, 427 U.S. at 103. Appellants rely upon <u>United States v. Vozzella</u>, 124 F.3d 389 (2d Cir. 1997), for their theory that this lower materiality threshold applies whenever the Government knowingly presents perjurious testimony and also fails to disclose evidence related to the perjurious testimony. In <u>Vozzella</u>, however, the undisclosed evidence was not only related to the false testimony, but it actually <u>demonstrated</u> the falsity of the testimony. <u>See id.</u> at 392; <u>cf. Kelly</u>, 35 F.3d at 936 n.10 (noting that although the parties in that case did not raise the issue, the Supreme Court has indicated that this lesser materiality standard applies when the undisclosed "evidence <u>demonstrates that a Government witness presented false testimony</u>"). Although we believe

_____

**8** We, accordingly, do not foreclose the possibility that two non-<u>Brady</u> violations may equal a <u>Brady</u> violation when viewed together.

that Appellants' reliance on Vozzella in this case is misplaced because the undisclosed nature of Jobe's relationship with the Drug Task Force does not demonstrate the falsity of Jobe's testimony concerning the extent of his past involvement with cocaine,[9] we remain confident in the trial's outcome even if we employ this lower materiality standard.

Appellants contend that, had Jobe told the truth about his cocaine abuse (or had they known of it so that they could have impeached him with his purportedly false testimony) and had they known that Drug Task Force members allowed Jobe access to improperly stored drug evidence, they would have adopted a new trial strategy attacking the integrity of the Drug Task Force and opting to impeach Moore and Lieutenant Adkins with inconsistencies in their prior statements. We are struck by the attenuated nature of this strategy to the actual facts at issue in Appellants' case. No matter how innovatively Appellants attempt to use the discovery of the Drug Task Force's and Jobe's questionable conduct to cloud the actual issues in this case, the fact remains that this conduct was at best only tangentially related to Appellants' trial. As we have noted, there is no evidence that there was any wrongdoing in connection with Appellants' case. Nor is there any indication that the Government's three key witnesses -- Moore, Lyons, and Woody Adkins -- were involved in any wrongful conduct with respect to their association with the Drug Task Force. In light of these facts, there is no reasonable likelihood that all of the new evidence, viewed cumulatively, could have affected the judgment of the jury, and we remain confident in the outcome of Appellants' trial.

_____

**9** We also note that to the extent Appellants' argument could be understood as complaining about the Government's failure to disclose the January 14, 1997 memorandum of Lieutenant Adkins's interview with Jobe, which would create a better analogy to the Vozzella case, the combination of this memorandum and Jobe's purportedly perjurious testimony would still not be material under this lesser standard for the same reasons that Jobe's purportedly perjurious testimony itself failed to meet this standard. Whether Jobe lied about not having a cocaine problem or the extent of his familiarity with cocaine simply could not have any impact on the jury's verdict in this case.

13

IV.

For the foregoing reasons, we affirm the district court's denial of Appellants' motions for a new trial.

AFFIRMED

14