**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 10-4165**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

CLOVER MAY ROBINSON-GORDON,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Mark S. Davis, District Judge. (2:09-cr-00003-MSD-TEM-26)

———————

Submitted: February 25, 2011      Decided: March 18, 2011

———————

Before MOTZ and DAVIS, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

Carol J. Breece, CAROL J. BREECE, P.A., Samuel J. Rabin, Jr., SAMUEL J. RABIN, JR., P.A., Miami, Florida, for Appellant. Neil H. MacBride, United States Attorney, Joseph E. DePadilla, Assistant United States Attorney, Norfolk, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Clover May Robinson-Gordon appeals from her convictions for conspiracy to defraud the United States and five counts of international money laundering. On appeal, Appellant challenges the sufficiency of the evidence supporting her convictions and asserts that the Government suborned perjury. We affirm.

I.

We review a district court's denial of a motion for judgment of acquittal de novo. United States v. Osborne, 514 F.3d 377, 385 (4th Cir. 2008). We are "obliged to sustain a guilty verdict that, viewing the evidence in the light most favorable to the prosecution, is supported by substantial evidence." Id. (internal quotation marks and citations omitted). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

A defendant bringing a sufficiency challenge bears a "heavy burden." United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995). The Government must be given the benefit of every reasonable inference. Id. Reversal for insufficient evidence

2

is reserved for "the rare case where the prosecution's failure is clear." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks and citation omitted).

Robinson-Gordon was charged with conspiring with Viktar Krus and others to fraudulently procure H2B visas for Jamaican workers. The H2B Visa Program was designed by Congress to allow American companies with seasonal job opportunities to temporarily hire foreign labor when employers could not find willing and qualified U.S. workers to fill the jobs. The work must be full-time, temporary work. Specific job types and locations must be identified, and workers cannot move between job types, employers, or locations. The worker must return to his or her native country when the work period ends. The conspiracy involved obtaining H2B visas and then sending workers to locations, jobs, and employers, different from those listed on the workers' documentation.

Given certain admissions in her reply brief, the only issues unwaived on appeal with regard to the sufficiency of the evidence on the conspiracy conviction are (1) whether the Government proved that Appellant had knowledge of the H2B rules or was willfully blind to them and (2) whether the Government proved that Appellant and Krus's company worked together toward a common goal. Since a conspiracy is by its nature clandestine and covert, it is generally proved by circumstantial evidence.

3

Burgos, 94 F.3d at 857. Evidence tending to prove a conspiracy may include a defendant's relationship with other members of the conspiracy, and the existence of a conspiracy may be inferred from a development and collocation of circumstances. Id. at 858. "Circumstantial evidence sufficient to support a conspiracy conviction need not exclude every reasonable hypothesis of innocence, provided the summation of the evidence permits a conclusion of guilt beyond a reasonable doubt." Id. (citation omitted).

We conclude that the evidence was more than sufficient on both these issues. First, a Ministry of Labour ("MOL") official testified that, in her first application for a license for her business, Appellant informed the MOL that she had knowledge of how the H2B program operates. The official testified that the MOL required licensees to be familiar with the H2B laws and even held training and seminars in that area that Appellant attended. In addition, the employment agreement that Appellant gave to the workers to fill out and that she sent to the MOL specifically stated that H2B visas required workers to work at a specified job in a specified location. Moreover, Appellant regularly completed DS-156 forms that listed incorrect positions or locations. On the basis of such evidence, the jury could have easily found that Appellant was aware of the governing laws and, thus, the illicit nature of the enterprise.

4

Even accepting Appellant's testimony that she never read any of the relevant documents or regulations, the jury was justified, given the above evidence, in concluding that she was willfully blind to the H2B rules. United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991) (allowing the jury to impute the element of knowledge to the defendant where the evidence indicates that he purposely closed his eyes to avoid knowing what was taking place around him).

Turning to Appellant's assertion that she did not share a common goal with the other coconspirators and operated independently, the record undercuts her argument. A co-conspirator testified that the majority of Krus's foreign labor force came from Jamaica and that Appellant's company was a "major" supplier of workers. Appellant's company supplied workers from early 2007 until January of 2009, and the two companies had a "mutual agreement" and a system of forwarding documentation and payments. Appellant continued sending workers after being notified that the workers would be going to states and job types other than those listed on the immigration forms. This evidence was sufficient to show that the conspirators shared a common goal and that Appellant intended to further that goal by continuing her part in the scheme. Accordingly, the district court properly denied the motion for judgment of acquittal on the conspiracy charge.

5

II.

With regard to her money laundering convictions, Appellant first asserts that the evidence was insufficient to support the conclusion that she knew that the wire transfers she made were in support of "the fraudulent procurement of H-2B visas for nonimmigrant aliens," as charged in the indictment. To prove that Appellant engaged in international money laundering, the Government had to show that she caused funds to be transferred "to a place in the United States from or through a place outside ... with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(2)(A) (2006). Intent to promote may be proven with evidence that the defendant used proceeds from an unlawful scheme to keep the scheme going. United States v. Caplinger, 339 F.3d 226, 233 (4th Cir. 2003). The promotion of an unlawful scheme can be proven without records documenting specific expenditures, and it is sufficient for the Government to prove that the transfers allowed Appellant to "perpetuate" the scheme. Id.

The first charged wire transfer took place on February 2, 2008, fully a year after Appellant began working with Krus. By the time of the first wire transfer, Appellant had already been licensed in Jamaica to provide H2B workers, she had attended a seminar on the regulations, and she had falsely completed DS-156 forms. In addition, she had been using the

6

Krus employment agreement that spelled out the H2B requirements and limitations. This evidence was sufficient to prove that Appellant was aware of, or was willfully blind to, the H2B regulations and her violation thereof.

Appellant also contends that certain of the payments were reimbursements for advance payments for airline tickets for the employees. She asserts that airline tickets did not promote the fraudulent procurement of H2B visas; however, she is mistaken. Even if these wire transfers reimbursed Krus for airline tickets purchased for the workers, this was a necessary step to "keep the scheme going." That is, Appellant profited from the fraudulent procurement of H2B visas, and this profit could not continue if the workers could not travel to the United States. The workers' travel was necessary to the success of the fraudulent visa scheme, and thus, payments for airline travel promoted the charged illegal activity. See United States v. Bolden, 325 F.3d 471, 489 (4th Cir 2003) (finding sufficient evidence where transfers were "integral to the success of the overall scheme").

Finally, Appellant asserts that the last three payments did not promote the future fraudulent procurement of H2B visas but rather constituted payment for past procurement. These payments took place between August and October 2008. The Government presented evidence that, in December 2008, Appellant

and a co-conspirator discussed, in a recorded conversation, their continuing relationship and their plans for future contracts, which would be implemented in the same manner as were contracts in the past. Thus, there was sufficient evidence to show that these three payments promoted the future fraudulent procurement of H2B visas in that future agreements with Krus depended on the successful completion of current contracts. The evidence showed that Appellant sought the continuation of her relationship with Krus, and such payments were crucial to any additional criminal endeavor. Accordingly, Appellant's motion for a judgment of acquittal was properly denied as to the money laundering charges.

III.

Finally, Appellant contends that a Government witness—Agent Mann—committed perjury when he gave false testimony that another company to which Appellant supplied workers had created an e-mail account, similar to Krus's, in order to deceive the authorities rather than to deceive Appellant. Appellant argued at trial that any transfer or diversion of workers between the companies was not illegal because they were the same company, or she believed they were the same company, based in part on the similar e-mails. Appellant avers that the Government knew Agent

Mann's testimony was false when it occurred and failed to disclose this fact.*

The testimony in question is Agent Mann's responses to Appellant's questions during cross-examination. Specifically, when asked by counsel whether the similarity of the e-mails is a coincidence, Agent Mann responded, "My opinion [is] that is a method to avoid detection by law enforcement." Counsel then asked whether Agent Mann "think[s]" the similarity would also confuse Appellant, and Mann responded, "Not at all."

This testimony could only be perjurious if Mann was misrepresenting his subjective belief as to the purpose of the similar e-mails. An allegation of perjury as to a "matter of perception" fails absent "conclusive proof" that the witness testified falsely as to his belief. Moreover, the Government suborned perjury only if the prosecutors actually knew that Mann was testifying falsely about his subjective beliefs. Absent "actual knowledge," the Government does not suborn perjury, even if its lawyers suspected or had reason to suspect that the

_____

* Appellant further asserts that the Government used this testimony in closing argument and wrongly attributed it to a co-conspirator. In closing argument, the Government, without objection, argued that the co-conspirator testified that the similar e-mails would protect them from law enforcement. We find that this was a proper inference from the co-conspirator's testimony that the second company suggested the similar e-mails because they "need[ed]" it to look like the two separate companies were, in fact, one company.

9

witness was lying about his views.  See United States v. Derrick, 163 F.3d 799, 828 (4th Cir. 1998).

Here, Appellant falls far short of showing perjury and subornation of perjury.  At most, Appellant has raised a question as to the purpose of the similar e-mails; she points to no evidence supporting the conclusion that Mann lied about his subjective belief that Appellant was not fooled by the similar e-mails.  In fact, Appellant's counsel elicited this information by asking for Mann's opinion.  Moreover, there is no evidence that the Government believed that Mann was incorrectly expressing his subjective belief.  As the record does not support a finding of perjury, Appellant's claim is without merit.

IV.

Based on the foregoing, we affirm Robinson-Gordon's convictions.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

10