33 F.3d 56
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Porfirio GONZALEZ, Defendant-Appellant.
 No. 93-2848.
 United States Court of Appeals, Seventh Circuit.
 Argued March 29, 1994.
Decided Aug. 26, 1994.
 
 1
 Before MANION and ROVNER, Circuit Judges, and PLUNKETT, District Judge*.
 
 ORDER
 
 2
 On February 9, 1993, Porfirio Gonzalez was convicted by a jury on a superseding indictment charging him and five co-defendants with conspiracy to distribute cocaine in violation of Title 21 United States Code sections 841(a) and 846. Count Two of the superseding indictment charged Gonzalez with a violation of Title 18 United States Code section 924(c), possession of a firearm during the course of drug trafficking. Gonzalez was sentenced to 121 months on Count One. He was acquitted on Count Two. Gonzalez appeals on four grounds, which we will consider seriatim.
 
 DISCUSSION
 
 3
 Gonzalez first contends that the trial court erred in accepting the recommendations of the magistrate judge to deny a motion to suppress the statements he made during the search of his home as well as the physical evidence seized from his home, garage and safe deposit box. Special Agent Pamela Potaczek of the Bureau of Alcohol, Tobacco and Firearms and Special Agent Raymond Melick of the Drug Enforcement Administration learned from Paulino Perez, one of Gonzalez' co-defendants, and Victor Cobian, an unindicted co-conspirator, that Gonzalez was involved in the distribution of cocaine. On July 15, 1992, Special Agents Potaczek and Melick went to the defendant's residence, where they were invited by Gonzalez to look around. Gonzalez admitted to owning two nine-millimeter pistols which he gave to the agents. Gonzales also turned over various financial records. In an apartment on the second floor of the residence, Special Agent Melick found a triple-beam scale, packaging material (including baggies and duct tape), a large glass automobile sunroof, and a wooden "rerocking" device.[2] The agents then looked about the defendant's garage, where they noticed two ratchets and a Phillips head screwdriver which the government argued were tools necessary to remove the rear bumper from a Nissan Sentra automobile that Gonzales and his confederates used to transport cocaine.
 
 
 4
 During the visit to the Gonzalez home, Special Agent Melick also noticed what appeared to be a safe deposit box key on a large key ring Gonzalez was carrying. When asked about it, Gonzalez indicated that he had no safe deposit box but perhaps it belonged to his wife, Annette Gonzalez. The agents ultimately arrested Gonzalez and telephoned his wife. She returned home, and when asked whether she or her husband had a safe deposit box responded "I don't know"; then she turned to Gonzalez and asked him whether or not they had such a box. The agents left Gonzalez' residence with the tools, the drug paraphernalia, the firearms, the financial records and Gonzalez, who was in custody at that point. As soon as they left the residence, the agents contacted First Wisconsin Bank and learned that indeed Gonzalez had a safe deposit box (No. 1214) at a branch bank. The bank representative was told not to permit anyone to enter the box until a search warrant could be obtained. Early in the afternoon of that very day, July 15, 1992, Mrs. Gonzalez went to the branch office of the bank and attempted to gain access to safe deposit box No. 1214. Upon being told it was necessary to contact the bank manager, she fled the bank. Later that afternoon, a search warrant was obtained. When the box was opened, the agents found a total of $40,220 in United States currency.
 
 
 5
 Gonzalez moved to suppress the physical evidence that had been found at his residence during the search along with any statements he had made at that time. He also attacked the validity of the search warrant for the safe deposit box, contending that the affidavit submitted in order to obtain the warrant included references to evidence that had been obtained during the purportedly illegal search of his residence.
 
 
 6
 After an evidentiary hearing, the magistrate judge found that Gonzalez had voluntarily consented to the search of his residence and garage. He also found that the incriminating nature of the handguns and the key to the safe deposit box were obvious to the agents and therefore were properly seized as part of a consensual search. Furthermore, he noted that Gonzalez' statements occurred either in a non-custodial setting or long after he had been advised of his Miranda rights and that he had made a knowing and voluntary waiver of those rights. The district judge adopted those findings.
 
 
 7
 We review the denial of a motion to suppress for clear error. E.g., United States v. Arch, 7 F.3d 1300, 1302 (7th Cir.1993) (citing United States v. Rice, 995 F.2d 719, 722 (7th Cir.1993) (collecting cases)), cert. denied, 114 S.Ct. 1123 (1994). "Because the resolution of such a motion is typically fact-dependent, we must 'give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses.' " Id.; United States v. Taylor, No. 93-2234, 1994 WL 391193, at * 3 (7th Cir. July 29, 1994). Thus, we will accept any factual determinations underlying the district court's decision so long as they find adequate support in the record and do not strike us as clearly erroneous. See id.; United States v. Durman, No. 92-3846, 1994 WL 363862, at * 1 (7th Cir. July 13, 1994).
 
 
 8
 At the evidentiary hearing, Special Agents Potaczek and Melick, Gonzalez, his wife, and his daughter, Maria Porfiria, each testified regarding the occurrences of July 15, 1992. The testimony revealed that after the agents identified themselves as federal law enforcement officers and Special Agent Melick read Gonzalez his Miranda rights from memory, Gonzalez was asked if he knew why they were there. Gonzalez responded that he believed it was because he had given $3,000 to the wife of Paulino Perez, who had been arrested earlier, in order that Perez might pay for the services of an attorney. Gonzalez testified that he understood that he could walk away from the agents and not talk to them but "It was my feeling that I had to talk to them because ... they were federal agents and I became nervous and afraid. They asked me if they could come into my house and talk to me and I said yes, they could come in and just talk." He further testified that he had not given the agents permission to search his house, his garage or any other place. The agents testified that they asked Gonzalez if he had anything illegal in his residence, such as cocaine, large amounts of money, or firearms. The agents and Gonzalez agreed that Gonzalez responded that he had "nothing to hide" and told the agents they could come inside and "we could talk." Before they entered the residence, Gonzalez told the agents that he did have two guns and gave Special Agent Potaczek a key to open the box containing the firearms. Special Agent Potaczek then asked Gonzalez if she could examine his bank records, and he gave them to her. Gonzalez subsequently accompanied Special Agent Melick to the second floor of the residence and opened the upstairs apartment. Agent Melick testified that he asked the defendant whether he could look around and was given permission to do so. It was in the apartment that Special Agent Melick found the drug paraphernalia and the sunroof to the Nissan. Special Agent Melick then asked Gonzalez if he could look in the garage, and according to the testimony, once again Gonzalez indicated that he had "nothing to hide." In the garage Special Agent Melick found the ratchets and screwdriver that he realized had been used on the Nissan to remove its bumper. He then returned to the dining room where Gonzalez was sitting with Special Agent Potaczek.
 
 
 9
 Warrantless searches to which the defendant consents are valid so long as his consent is freely and voluntarily given. United States v. Betts, 16 F.3d 748, 753 (7th Cir.1994) (quoting United States v. Duran, 957 F.2d 499, 503 (7th Cir.1992)); see also Taylor, 1994 WL 391193, at * 3. The magistrate judge concluded and the district judge agreed that Gonzalez had consented to the search of his property, and that conclusion was not clearly erroneous. Gonzalez himself testified that he voluntarily invited the agents into his home, although "merely to talk." Moreover, during questioning by the magistrate judge, Gonzalez also acknowledged that he realized he could deny the agents' request to search the home because he knew they neither had an arrest warrant nor a search warrant. Gonzalez did, of course, disclaim having given the agents permission to search the premises, but the agents' testimony was to the contrary; and the magistrate judge's decision to credit the agents' account rested on credibility assessments to which we defer. See id. at 755; Durman, 1994 WL 363862, at * 1.[3]
 
 
 10
 Gonzalez contends that even if he voluntarily consented to the search of his residence, the agents nonetheless lacked any basis to justify the seizure of the guns or the safe deposit key. Firearms, however, are obvious hallmarks of drug trafficking. Thus, Gonzalez' possession of the guns reasonably could have been construed as evidence of his involvement in a conspiracy to distribute cocaine. See United States v. Garrett, 903 F.2d 1105, 1113 & n. 11 (7th Cir.), cert. denied, 498 U.S. 905, 111 S.Ct. 272 (1990); United States v. Alvarez, 860 F.2d 801, 829 (7th Cir.1988), modified on other grounds, 868 F.2d 201 (7th Cir.), cert. denied, 490 U.S. 1051, 109 S.Ct. 1966, and 493 U.S. 829, 110 S.Ct. 97 (1989).[4] The fact that Gonzalez carried a key to a safe deposit box, on the other hand, arguably had little or no incriminatory meaning standing alone. Yet, once both Gonzalez and his wife denied owning a safe deposit box, the agents had reason to suspect that the box might contain contraband or other evidence of drug trafficking. Law enforcement officers surely are aware that people involved in the cocaine trade handle large sums of currency as well as contraband, and a safe deposit box is a logical place to place such currency. Thus, once Gonzalez and his wife had disclaimed possession of a box despite the key on Gonzalez' ring, the agents were justified in seizing it.
 
 
 11
 We also discern no error in the district court's refusal to suppress the statements that Gonzalez made during the agents' visit to his home. The magistrate judge found that before the agents asked Gonzalez any questions, Special Agent Melick advised him of his constitutional rights using language prescribed by Miranda v. Arizona. Gonzalez claimed not to have been read his rights until after the agents were shown the guns, but the district court was entitled to credit the agents' testimony, and nothing in the record calls that decision into question. See Betts, 16 F.3d at 763. Likewise, we detect no error in the district court's determination, based on the totality of the circumstances, that Gonzalez had waived his right to remain silent. See id.; Taylor, 1994 WL 391193, at * 3.
 
 
 12
 Having affirmed the district court's determination that there was nothing improper about the agents' questioning of Gonzalez or the search of his home and the seizure of items therefrom, we of course detect no taint in the search warrant later obtained on his safe deposit box. For all of the above reasons, the motions to suppress were properly denied.
 
 
 13
 Gonzalez next contends that there was insufficient evidence adduced at trial to support the jury's finding of guilt. "We must affirm unless the record is barren of any evidence, regardless of weight, from which the trier of fact could find guilt beyond a reasonable doubt." United States v. Kaufmann, 985 F.2d 884, 895 (7th Cir.) (internal quotation marks and citations omitted), cert. denied, 113 S.Ct. 2350 (1993); see also United States v. Wilson, No. 94-1148, 1994 WL 396615, at * 2 (7th Cir. Aug. 2, 1994); Taylor, 1994 WL 391193, at * 4.
 
 
 14
 There was more than ample evidence to support the jury's verdict as to Gonzalez. Perez's testimony corroborated the testimony of Special Agents Potaczek and Melick regarding the drug distribution paraphernalia as well as the tools necessary to remove the bumper. In fact, Perez directly implicated Gonzalez in the distribution of cocaine, testifying, inter alia, that he had used Gonzalez' garage to unload cocaine from the vehicles used to import the drug from California and that Gonzalez had distributed portions of that cocaine. Juan Estrella in turn corroborated the testimony of Perez, as did Cobian. Once again we reject the argument that has been made by Gonzalez here, that the jury could not have believed Perez. Nothing about Perez' testimony was either physically impossible or contrary to the laws of nature. See Wilson, 1994 WL 396615, at * 2. Gonzalez makes much of the false statements that Perez had initially made to the agents, as well as his motives for testifying on the government's behalf. But these circumstances were made known to the jury, which apparently credited his testimony nonetheless. This the jury was entitled to do. Id., at * 3. Therefore the district court's denial of his motion for judgment of acquittal was not clearly erroneous.
 
 
 15
 Relying on the same argument that Perez's testimony was incredible as a matter of law, Gonzalez asserts that the district court should have granted his motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure for a new trial. The decision to grant a new trial under Federal Rule of Criminal Procedure 33 is a matter of discretion for the district court and its decision will be disturbed on appeal only if the district court abused that discretion. United States v. Young, 20 F.3d 758, 763 (7th Cir.1994); United States v. Santos, 20 F.3d 280, 285 (7th Cir.1994). Perez' testimony was consistent throughout and was corroborated by physical evidence and the testimony of other government witnesses. The jury resolved the issue of credibility against Gonzalez and, as we have noted, we discern nothing which casts a shadow on that assessment. The district court's decision to deny Gonzalez' motion for a new trial therefore was not an abuse of discretion.
 
 
 16
 Lastly, Gonzalez argues that his conviction should be vacated, a judgment of acquittal entered or alternatively, a new trial granted, because the jury's verdict against him was inconsistent with its decision to acquit his co-defendant, Tracy Ingram. As we have discussed, viewed in a light most favorable to the government, there was ample evidence to support the jury's finding that Gonzalez had conspired with others to distribute cocaine as charged in the indictment. That being the case, Ingram's acquittal on the same charge is really immaterial. See United States v. Byerley, 999 F.2d 231, 234 (7th Cir.1993); United States v. Mancari, 875 F.2d 103, 104 (7th Cir.1989), cert. denied, 499 U.S. 924, 111 S.Ct. 1320 (1991). That having been said, we find upon reading the record that the case against Gonzalez was significantly stronger than the case against Ingram. Consequently, the jury's decision to acquit Ingram in no way calls into doubt its decision to convict Gonzalez.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Of the Northern District of Illinois, sitting by designation
 
 
 [2]
 This was a device that Perez had fashioned to compress a load of cocaine that was too "powdery."
 
 
 [3]
 The magistrate judge believed that the encounter between Gonzalez and the agents remained non-custodial until the agents discovered the incriminating evidence in his home, the second-floor apartment, and the garage. We do not think that determination was clearly erroneous. Moreover, even if we assume that the encounter ripened from a purely consensual discussion into an investigatory stop at the outset when the agents asked Gonzalez if he had anything illegal in his home and requested permission to search the premises, we find nothing in the record suggesting that Gonzalez' decision to permit the search was coerced. See United States v. McCarthur, 6 F.3d 1270, 1277 (7th Cir.1993)
 
 
 [4]
 Furthermore, we agree with the district court that once the agents had probable cause to arrest Gonzalez for drug trafficking, the handguns seized by the agents themselves became contraband