**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MARSHAWN DIMAR STOKES, a/k/a
Shawn,
*Defendant-Appellant.*

No. 99-4717

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

AHMAD SIMMION LINTON,
*Defendant-Appellant.*

No. 99-4718

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

CORNELL ALVIN WILLIAMS, a/k/a
Corney,
*Defendant-Appellant.*

No. 01-4174

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ANTWAN ASKIA,
*Defendant-Appellant.*

No. 01-4275

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Benson Everett Legg, Chief District Judge.
(CR-98-258-L)

Argued: February 28, 2003

Decided: April 14, 2003

Before WIDENER and LUTTIG, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Harvey Greenberg, Towson, Maryland; Arcangelo
Michael Tuminelli, Baltimore, Maryland, for Appellants. Robert
Reeves Harding, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Jack B. Rubin, Flynn M. Owens,
Baltimore, Maryland, for Appellant Stokes; Peter D. Ward, Baltimore, Maryland, for Appellant Askia. Thomas M. DiBiagio, United
States Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

## OPINION

PER CURIAM:

 Appellants Marshawn Stokes ("Stokes"), Ahmad Linton ("Linton"),
Cornell Williams ("Williams"), and Antwan Askia ("Askia") appeal

a jury verdict finding them guilty of conspiracy to distribute cocaine and finding Stokes and Linton guilty of conspiracy to commit murder in aid of racketeering. We affirm.

I.

Stokes, Askia, Williams, Linton and others worked together in the sale of crack cocaine in the O'Donnell Heights housing development of Baltimore. They protected and looked out for each other in order to prevent robberies and they pooled their money to buy drugs in quantity.

Another group of drug dealers, the "Nickel Boys,"[1] also sold drugs in O'Donnell Heights. The Nickel Boys and the appellants fought over O'Donnell Heights turf because they were vying for the same customers. On August 15, 1997, Stokes and Linton murdered Anthony Hamilton ("Hamilton"), a member of the Nickel Boys, after an argument over sales territory. Askia and Williams were not involved in the murder. Two days after Hamilton's death, shots were fired at members of the Nickel Boys from the same gun that was used in the killing.

Each appellant was charged with conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a) (Count III of the indictment). Stokes and Linton were also charged under 18 U.S.C. § 1959 with conspiracy to commit murder in aid of racketeering for the murder of Hamilton (Count I of the indictment) and conspiracy to murder other members of the Nickel Boys, namely Damon Reaves, Alfred Cheese, and Antonio Howell (Count II of the indictment). The appellants were tried together, despite their motions for severance. All were found guilty of conspiracy to distribute cocaine. Stokes and Linton were found guilty of conspiracy to commit murder in aid of racketeering for the murder of Hamilton, but were found not guilty of the conspiracy to murder Reaves, Cheese and Howell. Each appellant filed an appeal, and their appeals were consolidated into this one proceeding.

---

[1] So named because of their propensity to sell "nickel" bags, or $5 bags, of crack.

## II.

Appellants argue five issues: (1) that the district court[2] erred in failing to suppress evidence obtained from the execution of warrants allowing a search of Stokes's and Linton's homes and Stokes's car, (2) that "periodic arrest" evidence was erroneously admitted at trial, (3) that the district court erred in denying the motions to sever, (4) that the district court erred in admitting coconspirator statements of Stokes and Linton against Askia and Williams, and (5) that the district court erred in denying Stokes's and Linton's motion for acquittal.

## A.

Stokes and Linton claim that the affidavits supporting the warrants used to search Stokes's homes and car and Linton's home lacked a showing of probable cause that evidence of the crimes could be found in these locations and that, as a result of this shortcoming, the district court should have suppressed the evidence obtained from these areas. The district court has a limited role in reviewing an issuing magistrate's probable cause determination and must only "'ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Bynum*, 293 F.3d 192, 202 (4th Cir. 2002), quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). We review the district court's determination de novo, *United States v. Han*, 74 F.3d 537, 540 (4th Cir. 1996), and, upon doing so, we disagree with appellants' contention.

The affidavits supporting the requests for the search warrants showed that Stokes had been identified as the shooter in the killing of Hamilton and that Linton had been present at the murder scene with a handgun and fled with Stokes. The affidavits also indicated that the places to be searched were Stokes's residences and Linton's residence and the automobile that Stokes regularly drove. These facts established probable cause to believe that evidence of the crime would be found in the designated homes and vehicle.

---

[2]The Honorable Benson Everett Legg, United States District Judge for the District of Maryland (Northern Division).

We have clearly held that an affidavit seeking a warrant to search a murder suspect's home need not contain any particular facts showing that the murder weapon is located in the home. Rather, it is enough that the judge issuing the warrant can infer that the weapon is likely to be kept at the residence because weapons are usually kept either on the person or at the person's abode. *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988). While probable cause to arrest a suspect does not equate with sufficient cause to search a suspect's home, *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993), when a murder suspect has been identified by several witnesses and left the scene with a murder weapon, that is enough to create probable cause to search the suspect's residence and car for the weapon. In any event, the district court was correct in finding that the good faith exception to the exclusionary rule would apply. Even a well trained officer would not have known that there was any defect in these particular warrants. *See United States v. Leon*, 468 U.S. 897, 913, 922-23 (1984); *United States v. Hyppolite*, 65 F.3d 1151, 1156 (4th Cir. 1995).

## B.

The appellants argue that the district court erred in admitting "periodic arrest" evidence. We review a trial court's admission of evidence for abuse of discretion. *United States v. Mohr*, 318 F.3d 613, 618 (4th Cir. 2003). If evidence is admitted improperly, the next test is whether that evidence was harmless or not; in other words, whether it is probable that the error could have affected the jury verdict in the particular circumstances of the trial. *United States v. Hernandez*, 975 F.2d 1035, 1041 (4th Cir. 1992).

Evidence that is intrinsic to the crime charged is admissible. *United States v. Lipford*, 203 F.3d 259, 268 (4th Cir. 2000). Evidence of acts extrinsic to the crime charged is subject to Federal Rule of Evidence 404(b), or, perhaps, other applicable evidentiary rules depending upon the purpose for which the proof is offered. The district court found that the periodic arrest evidence was intrinsic to the crimes of conspiracy to distribute cocaine and conspiracy to commit murder in the aid of racketeering. Criminal acts are intrinsic when the crimes at issue are "inextricably intertwined or [the] acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime

charged." *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (adopted by *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996)). The government alleged and was required to prove that the drug conspiracy was an enterprise under 18 U.S.C. § 1959. To help establish such an enterprise, the government offered evidence that all of the appellants were engaged in drug distribution, carried firearms, and committed crimes of violence during the time they were charged with conducting this business. Guns and acts of violence are tools of the drug trafficking trade. *United States v. Otis*, 107 F.3d 487, 491 (7th Cir. 1997); *United States v. Gonzalez*, 33 F.3d 56, No. 93-2848, 1994 WL 464425 (7th Cir. Aug. 26, 1994) (unpublished), citing *United States v. Garrett*, 903 F.2d 1105, 1113 & n.11 (7th Cir. 1990); *United States v. Soler*, No. 94 Cr. 533, 1998 WL 167327 (S.D.N.Y. Apr. 9, 1998). Accordingly, this evidence tended to prove the existence of both a drug conspiracy and a racketeering enterprise. Thus, it was admissible intrinsic evidence under both counts of conviction.

## C.

The appellants also argue that it was error not to sever the defendants' trials. We review severance decisions for abuse of discretion. *United States v. Ford*, 88 F.3d 1350, 1361 (4th Cir. 1996). We have already held that juries are capable of segregating evidence properly when there are multiple defendants charged with multiple, unrelated crimes and conspiracies. *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994). Here, the jury would have been able to distinguish the evidence against each defendant for each charge and there was no risk that Askia and Williams were convicted because of the evidence that Stokes and Linton committed the Hamilton murder. There was also ample evidence that Askia and Williams were guilty of conspiring to distribute cocaine and we have already noted that the use of firearms and the commission of crimes of violence are part and parcel of illicit drug commerce. The district court properly instructed the jury on how to separately consider the evidence against each defendant.[3] There was no abuse of discretion in the denial of the motions to sever.

---

[3]The jury instruction stated, "There are four men here on trial, four defendants. In an ideal world, they would each be tried separately, in a trial in which they would be the sole defendant. . . . So consider the evi-

D.

Coconspirator statements are not hearsay under Federal Rule of Evidence 801(d)(2)(E) if they are made during the course and in furtherance of the conspiracy. The district court admitted statements by Stokes and Linton under this rule, finding they were made during the course and in furtherance of the conspiracy charged. The statements involved Stokes's and Linton's attempts to conceal conspiratorial acts and to intimidate and kill potential witnesses. Appellants Williams and Askia argue that the district court erred in receiving these statements because the declarations were made after the conclusion of the drug conspiracy when Stokes and Linton were in prison. Thus, they contend, any "conspiracy" must have been one newly designed for the purpose of obstructing justice, not distributing drugs.

We review for clear error the district court's factual determination that the statements were made during the course and in furtherance of the drug conspiracy and we may only overturn the court's decision to admit evidence under Rule 801(d)(2)(E) if it constituted an abuse of discretion. *United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992). There is some support for appellants' "after arrest" contention. *Wong Sun v. United States*, 371 U.S. 471, 490 (1963). However, application of the limited rule set forth in *Wong Sun* is not appropriate in this case because the evidence established that the incarceration of Stokes and Linton did not end the drug conspiracy or their involvement in it.[4] The Supreme Court recently explained that "conspiracy

---

dence against each defendant separately and consider the evidence on each count separately. . . . Each defendant is entitled to separate consideration. . . . Your verdict should be based solely upon the evidence or lack of evidence as to the defendant you are considering in accordance with my instructions and without regard to whether the guilt of other people has or has not been proven."

[4]The government also contends that even if the drug conspiracy ended with the arrest of Stokes and Linton, the admission of coconspirator statements need not be supported by the conspiracy charged in the indictment. *United States v. Shores*, 33 F.3d 438, 442, n.3 (4th Cir. 1994). On its face, *Shores* is not precisely on point here and in any event, we believe we need not travel this path today.

law does not contain any . . . 'automatic termination' rule," *United States v. Jimenez Recio*, 123 S. Ct. 819, 821 (2003), even when the object of the criminal agreement has become impossible to achieve. Acts of witness intimidation and concealment of the conspiracy often constitute a continuation of the scheme. *See Grunewald v. United States*, 353 U.S. 391, 405 (1957). The disputed evidence emanated from letters written or conversations undertaken at the jail. It appears that when some of these oral and written statements were formulated, both Stokes and Linton were present. At the time, Williams, Askia and several other coconspirators were still on the street. Stokes noted in one letter that he and Linton were in jail on "one murder" charge but not "drug charges." He then directed those on the outside to "chill until the 15th" because the federal authorities "have to have phone taps or be watching" and "[c]hilling the next couple of days is worth not spending the next couple of years in jail."

The district court found that these and other contemporaneous statements were made in the course and in furtherance of the objectives of the charged drug conspiracy and were admissible under Rule 801(d)(2)(E). We agree.

E.

Finally, appellants Stokes and Linton argue that the district court erred in denying their motion for judgment of acquittal on the charge of conspiring to murder Hamilton because there was no Racketeer Influenced and Corrupt Organizations ("RICO") enterprise. 18 U.S.C. § 1959. The jury's verdict must be sustained if there is substantial evidence to support it, taking a view most favorable to the government. *United States v. Steed*, 674 F.2d 284, 286 (4th Cir. 1982). Employing this standard, we find no merit to the claim.

Stokes and Linton were convicted under 18 U.S.C. § 1959. Thus, the government had to prove,

> "(1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so

doing was to maintain or increase his position in the enterprise."

*United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994), quoting *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992). Stokes and Linton argue that elements one and five were not met because the drug conspiracy could not be considered a "RICO enterprise" and the government did not show that their general purpose in carrying out the murder was to maintain or increase their position in the enterprise. We disagree with their contention.

A "RICO enterprise" includes "any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(b)(2). The "hallmark concepts" that identify RICO enterprises are "continuity, unity, shared purpose and identifiable structure." *Fiel*, 35 F.3d at 1003; *United States v. Griffin*, 660 F.2d 996, 1000 (4th Cir. 1981). A group of drug dealers can be considered an "enterprise" under RICO if these elements are satisfied. *See United States v. Hoyte*, 51 F.3d 1239, 1244-45 (4th Cir. 1995). In the present case, the appellants engaged in a course of drug dealing over multiple years and there was no suggestion that the conspiracy would not have continued had the appellants not been arrested. Thus, there was continuity. The appellants worked together, watched each others' backs, protected each other, and engaged in continuing "turf wars" with the Nickel Boys. The conspiracy was unified. The shared purpose of the conspiracy was for each member to obtain, sell, and profit from the sale of drugs. The members of the conspiracy called themselves the "family" and Stokes was identified as the leader of the group. There was an identifiable structure. Accordingly, all of the "hallmarks" of a RICO enterprise were present in appellants' drug conspiracy. *See Fiel*, 35 F.3d at 1003.

In *Hoyte*, a group of drug dealers murdered a man who had allegedly stolen drugs from them and the evidence suggested that the drug dealers wanted to intimidate others into not stealing their narcotics. 51 F.3d at 1245. We upheld the drug dealers' conviction in *Hoyte* under section 1959 because a reasonable jury could have found that "the murder was committed in furtherance of the defendants' drug trafficking." *Id.* The circumstances of this case are similar to *Hoyte*.

A reasonable jury could have found that Hamilton's murder was committed by Stokes and Linton in furtherance of their drug trafficking initiative and their relative positions in that undertaking. Thus, there was substantial evidence to support the jury's verdict.

## III.

For the reasons stated above, we affirm the judgment of the district court.

*AFFIRMED*