**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-4288**

———————

UNITED STATES OF AMERICA,

> Plaintiff - Appellee,

> v.

JAMES C. JONES, JR.,

> Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Michael F. Urbanski, Senior District Judge.  (7:20-cr-00046-MFU-1)

———————

Argued:  May 7, 2025                    Decided:  September 19, 2025

———————

Before WILKINSON and KING, Circuit Judges, and Matthew J. MADDOX, United States District Judge for the District of Maryland, sitting by designation.

———————

Affirmed in part, and vacated in part and remanded, by unpublished opinion. Judge Maddox wrote the opinion, in which Judge Wilkinson and Judge King joined.

———————

**ARGUED:** Erin Margaret Trodden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Todd Alan Ellinwood, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Mary Maguire, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  David A. Hubbert, Deputy Assistant Attorney General, S. Robert Lyons, Chief, Criminal Appeals & Tax Enforcement Policy Section, Katie Bagley, Joseph B. Syverson, Tax Division, UNITED STATES DEPARTMENT OF

JUSTICE, Washington, D.C.; Zachary T. Lee, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

MATTHEW MADDOX, District Judge (sitting by designation):

On August 20, 2020, James C. Jones, Jr. was indicted in the U.S. District Court for the Western District of Virginia for tax-related offenses. An eight-count superseding indictment was filed on September 15, 2023, charging Jones with violations of 26 U.S.C. §§ 7201, 7206(1), and 7212(a). On November 21, 2023, Jones was convicted by a jury on all counts of the superseding indictment. The matter proceeded to sentencing on May 7, 2024. The district court determined that Jones's Sentencing Guidelines range was 63 to 78 months of imprisonment, based in part on two two-level increases to Jones's offense level under U.S.S.G. § 2T1.1(b)(1) and (b)(2), to which Jones objected. Jones was sentenced to a total prison term of 78 months and supervised release for a total period of three years. The district court also imposed a fine of $250,000 and ordered restitution in the amount of $394,508.

Jones now challenges the sufficiency of the evidence in support of his convictions and challenges application of U.S.S.G. § 2T1.1(b)(1) to compute his Sentencing Guidelines range. Additionally, the parties agree that the district court committed a *Rogers* error that warrants resentencing. For reasons stated below, we affirm Jones's convictions as founded upon sufficient evidence and proper application of the challenged Sentencing Guidelines enhancement, and we vacate Jones's sentence and remand to remedy the *Rogers* error.

I.

James C. Jones, Jr. was the owner and president of Lifeline Ambulance Service, Inc. ("Lifeline"), a Subchapter S corporation in Virginia, from the late 1980s until the business ceased operation sometime around 2010. Lifeline was required to withhold taxes from the

3

wages of its employees, hold them in trust, and pay them over to the federal government. In 2008 and 2009, Jones withheld employment taxes from the wages of Lifeline employees and filed employment tax forms with the Internal Revenue Service ("IRS") but did not pay Lifeline's employment taxes to the IRS.

In May 2009, IRS Revenue Officer Susan Meador began contacting Jones, attempting to collect the delinquent employment taxes from Lifeline necessary to bring the company into compliance. On May 27, 2009, Meador had a Trust Fund Recovery Penalty ("TFRP") interview with Jones. Jones withheld information and made false statements about his assets in an IRS Form 433-B, Collection Information Statement for Business, and signed this form under penalties of perjury. In June 2009, following the TRFP interview, the IRS determined that Jones was independently liable for the unpaid trust fund taxes,[1] which amounted to $186,519.55. Upon making this assessment, Meador requested financial and other information from Jones to ascertain his ability to pay the delinquent employment taxes and the TFRP. On October 12, 2010, Jones completed IRS Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, which omitted the fact that he owned high-value cars and real estate, including five luxury apartments on the Dutch Caribbean island of St. Maarten. Jones also omitted the rental income he received from these properties and the offshore real estate holding companies associated with them. The Form 433-A that Jones completed was contradicted by a

---

[1] "Trust fund taxes" refers to employment taxes held from employees by the employer in trust to be paid over to the IRS. *See* J.A. 7515.

4

statement of affairs provided to a bank in St. Maarten earlier in 2010, when he reported assets—including his cars and real estate—which totaled over $14.5 million in value. He also listed his holding companies on the statement of affairs.

In addition, Jones owned commercial property in Richmond, Virginia (the "Aspen Avenue property") and Christiansburg, Virginia (the "Bell Road property") that he did not report on the Form 433-A. The Bell Road property was listed on the statement of affairs submitted to the bank in St. Maarten. Jones transferred the Aspen Avenue and Bell Road properties out of his name while the IRS attempted to collect the unpaid employment taxes. Jones sold the Aspen Avenue property for $1,075,000 in July 2009. He paid $599,920 of the proceeds to Marine Holding, a St. Maarten corporation controlled by real estate developer Luis Gioia. Jones also transferred the Bell Road property from his holding company Falling Branch Properties, LLC ("Falling Branch") to Marine Holding. During the transfer of the property, Jones provided his closing attorney paperwork stating that he borrowed $400,000 from auto dealer Dana Mecum and that Marine Holding had acquired that loan. The paperwork indicated that Marine Holding would take ownership of the property in satisfaction of the loan. However, Mecum never loaned Jones $400,000, and the deed of trust presented at the closing was forged. The paperwork Jones provided— purportedly signed by Tony Cabeceira as chief financial officer—listed an address for Marine Holding in Miami, Florida. But Marine Holding had no Miami office, Cabeceira was not its chief financial officer, and he never authorized or signed those documents. Jones provided a false document concerning the transfer of the Bell Road property to IRS Officer Meador during the agency's collection efforts in 2010. He later gave several false

5

documents to Special Agents of IRS-Criminal Investigation, including a Mecum promissory note and false real estate documents involving Marine Holding.

In 2017, Jones was subpoenaed by a grand jury to produce records of any foreign bank accounts that he owned or controlled within the previous five years. Jones responded to the subpoena through his attorney stating that he did not have any records to provide. The government even clarified to Jones that he had an obligation not only to turn over documents in his possession, but also retrieve them from any foreign bank accounts that he controlled. At Jones's direction, his attorney responded by email falsely claiming that Jones still had nothing to provide. At the time of this response, Jones owned or controlled at least five foreign bank accounts.

In addition, Jones filed false personal tax returns for tax years 2013 through 2018. The personal tax returns contained several falsehoods, including claimed large business casualty and theft losses of over $2.4 million and claimed losses related to Jones's divorce exceeding $1.4 million, and falsely omitted rental income from his St. Maarten properties.

On September 15, 2023, a grand jury sitting in the Western District of Virginia returned the modified superseding indictment charging Jones in eight counts: Count One, corruptly endeavoring to obstruct the IRS in violation of 26 U.S.C. § 7212(a); Count Two, tax evasion in violation of 26 U.S.C. § 7201; and Counts Three through Eight, filing false individual tax returns, in violation of 26 U.S.C. § 7206(1). The matter proceeded to a jury trial beginning on November 14, 2023. On November 21, 2023, the jury found Jones guilty on all counts.

II.

On appeal, Jones argues that the evidence presented at trial was insufficient to support convictions on the eight counts of the superseding indictment. "A defendant who challenges the sufficiency of the evidence 'must overcome a heavy burden.'" *United States v. Robinson*, 855 F.3d 265, 268 (4th Cir. 2017) (quoting *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995)). We review such challenges by determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Collins,* 412 F.3d 515, 519 (4th Cir. 2005) (quoting *United States v. Fisher*, 912 F.2d 728, 730 (4th Cir. 1990)). The court considers "'all the evidence considered by the jury, both admissible and inadmissible' when assessing a sufficiency challenge." *United States v. Huskey*, 90 F.4th 651, 662 (4th Cir. 2024) (quoting *United States v. Simpson*, 910 F.2d 154, 159 (4th Cir. 1990)). The jury's verdict "*must be upheld*" if "substantial evidence" supports it—that is, "'evidence that a reasonable finder of fact could accept as adequate and sufficient to support' the defendant's guilt." *United States v. Banker*, 876 F.3d 530, 540 (4th Cir. 2017) (quoting *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010)). Witness credibility is not reviewed; and we assume that the jury resolved all credibility disputes and testimonial contradictions in favor of the government. *See Huskey*, 90 F.4th at 662. Reversal for insufficient evidence is "limited to 'cases where the prosecution's failure is clear.'" *United States v. Spirito,* 36 F.4th 191, 200 (4th Cir. 2022) (citation omitted). A defendant who prevails on a challenge to the sufficiency of the

7

evidence is "entitled to a judgment of acquittal without further proceeding." *Huskey*, 90 F.4th at 662.

We shall address the sufficiency of the evidence in support of Counts Three through Eight before proceeding to address Counts One and Two.

A.

1.

Jones first challenges the sufficiency of the evidence in support of his convictions for filing false income tax returns, as charged in Counts Three through Eight of the superseding indictment. These counts charge Jones with filing a false individual tax return for each tax year from 2013 through 2018, in violation of 26 U.S.C. § 7206(1). J.A. 183–84. Each count corresponds with a tax year for which Jones filed the false return (i.e., Count Three for tax year 2013; Count Four for 2014; Count Five for 2015; Count Six for 2016; Count Seven for 2017; Count Eight for 2018). *Id.*

An individual violates § 7206(1) if he or she "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter[.]" 26 U.S.C. § 7206(1). A breach of federal tax laws is "willful" if there was a "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201, 111 S. Ct. 604, 610, 112 L. Ed. 2d 617 (1991). "Intent may be inferred from conduct, and willfulness in a criminal tax case may be established by a consistent pattern of not reporting income or inconsistently reporting income." *United States v. Mathews*, 761 F.3d 891, 893 (8th Cir. 2014) (citation modified); *see also United*

8

*States v. Diamond*, 788 F.2d 1025, 1030 (4th Cir. 1986) ("[D]irect evidence of intent . . . is of course seldom possible and never a requisite to finding the necessary culpability of mind beyond a reasonable doubt.").

Jones does not contest the sufficiency of the government's evidence at trial that his "personal tax returns for the years 2013 through 2018 contained improper deductions and failed to disclose income from properties in St. Maarten." Appellant Br. At 18. Jones focuses his challenge on the sufficiency of evidence that he acted willfully and with knowledge that the tax returns were improper. The government argues that the trial evidence was more than sufficient to show that Jones willfully submitted false personal tax returns to the IRS for tax years 2013 through 2018. Appellee Br. at 19. The government points out that the trial evidence established that Jones failed to report substantial income from his rental properties for the charged tax years, used a nominee company director to evade discovery that he owned the properties, falsely claimed the casualty or theft loss from his divorce judgment, and improperly reported embezzlement losses; that his testimony was implausible and false; and that he took affirmative acts in the years before filing the false tax returns to evade the payment of employment taxes. Viewing the trial evidence in its totality, we find the evidence of willfulness presented at trial to be sufficient.

First, the amount of rental income from Jones's rental properties in St. Maarten that he failed to disclose in each of the charged tax returns was substantial. In statements of affairs Jones submitted to a bank in St. Maarten, which were presented at trial, Jones reported rental income from properties in St. Maarten totaling $196,236 in 2014 and $196,236 in 2016. J.A. 1337, 1368. In addition, the IRS determined from the available

9

evidence the amounts of rental income these properties generated each year that Jones failed to report it in his tax return. IRS agent Jennifer Maroulis testified at trial that, based on her calculations, the properties generated between $120,000 and $170,750 in rental income each year from 2013 through 2016, $70,100 in 2017, and $29,600 in 2018. J.A. 7523–25; S.A. 001. Thus, a substantial amount of income was generated by the St. Maarten properties, and none of it was reported in Jones's personal income tax returns spanning several years. *See generally* J.A. 4463–5157. In sum, Jones reported substantial rental income to the St. Maarten bank while repeatedly omitting it from his tax returns. A rational juror could infer, from this evidence, that Jones was aware of this substantial income and that his failure to report it in his tax returns was intentional.

Second, the government established at trial that Jones hired an offshore nominee company director for the St. Maarten properties and took other steps that had the effect of concealing Jones as the beneficial owner of the properties. The director, Hans Pfennings, testified that Jones hired Pfennings and his management companies to manage the companies through which Jones owned his real estate. Pfennings's job as management director of the companies was to "set up the corporation and open a bank account and do . . . day-to-day-management, and keep the company in good standing, and file the tax returns if required." J.A. 6909:6–9. Pfennings, through his St. Maarten-based management company Chartwell, managed a number of Jones's real-estate companies, each of which owned property in St. Maarten. J.A. 6912. Antonio Cabecceira, a St. Maarten-based commercial banking officer and business associate of Pfennings, testified that as "managing director [Pfennings] would have to sign for . . . anything that was done within

10

the company." J.A. 6743–44. However, Pfennings's testimony made clear that he had no decision-making authority respecting the properties but rather followed Jones's instructions. J.A. 6962–66. Trial evidence established that Jones directed Chartwell to issue bearer shares for some of his companies. J.A. 6087, 6912, 6915, 6931. The actual owner of bearer shares is not registered anywhere. The share is "embodied in a bearer share certificate" such that anyone in possession of the certificate is a shareholder of the entity. J.A. 6915. Thus, Jones's hiring of an offshore nominee company director for the St. Maarten properties and issuance of bearer shares both tended to conceal his identity as the beneficial owner of the properties and, therefore, offered support for a rational finding that he acted willfully in failing to disclose income from the properties in his tax returns.

Third, during his testimony at trial, Jones denied ownership of the properties in St. Maarten, offered minimal explanation for documentary evidence to the contrary, and denied signing documents that bore his signature. *See, e.g.*, J.A. 7677, 7693–94, 7701–03. Jones testified that other trial witnesses were lying, including Gioia, *see* J.A. 7758–59, who testified that Jones had bought several St. Maarten properties from him, J.A. 6997. Considered in light of other testimony Jones provided that was contradicted by documentary evidence and testimony from multiple witnesses, Jones's testimony about the properties in St. Maarten could be found by a rational juror to be false, lending support to a finding that Jones willfully avoided reporting his rental income from the properties. *See United States v. Burgos*, 94 F.3d 849, 868 (4th Cir. 1996) (en banc) ("A defendant's credibility is a material consideration in establishing guilt, and if a defendant 'take[s] the stand . . . and denies the charges and the jury thinks he's a liar, this becomes evidence of

11

guilt to add to the other evidence.'") (quoting *United States v. Zafiro*, 945 F.2d 881, 888 (7th Cir. 1991), *aff'd,* 506 U.S. 534, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993)).

Fourth, the government established at trial that, on IRS Form 4684 for tax year 2013, Jones improperly reported a business casualty loss of $1,405,376 he was required to pay in a divorce settlement. J.A. 5101. The relevant section of Form 4684, Section B, instructs taxpayers to report the amounts of losses and damages to businesses and income-producing property they own. The $1.4 million loss reported on Jones's Form 4684 is listed as a loss for his holding company Falling Branch. *Id.* During his testimony at trial, however, Jones admitted that the $1.4 million loss was based on a divorce settlement or judgment against him, which Jones admitted he never paid. J.A. 7709–10. Any rational juror could conclude, based on their common sense, that Jones's listing of this amount as a casualty loss to Falling Branch on the Form 4684 was improper.

Fifth, the government established at trial that Jones improperly reported substantial embezzlement losses to Lifeline on the same 2013 Form 4684. During the divorce proceedings, Jones sued his ex-wife, Karen Peterson-Jones, for embezzlement. J.A. 7444. The embezzlement suit was dismissed around August 2010. J.A. 7445. During trial in the instant case, Petersen-Jones testified that she never embezzled money from Lifeline. *Id*. A rational juror could accept this testimony as evidence that Jones never sustained losses from embezzlement.

Further, Jones received professional advice *not* to claim a deduction for the alleged embezzlement losses. Jones's accountant Jim Patton testified that he prepared Jones's corporate tax returns and, during discussions with Jones, told him that he could not include

12

the alleged embezzlement losses on the corporate tax return for Lifeline because, "if you report on the cash basis, you may not take a deduction for the embezzlement of income you have not reported." J.A. 7255–56. Jones had other communications with Patton's office on the topic, including emails advising Jones that embezzlement losses are deductible "in the year the theft is discovered[,]" J.A. 7256, and "if the amounts have previously been reported in income[,]" J.A. 7257. In the latter email, Jones was specifically advised that "no amount ha[d] ever been taxed which could subsequently be written off." *Id.* While Jones concedes that Patton advised him not to claim the embezzlement losses on his corporate return, he argues that Patton did not "unequivocally" tell Jones not to claim the losses on his personal return. Appellant Br. 18. But in another email, Jones confirmed his understanding that he could not claim the embezzlement losses on his personal tax return, based on a discussion with an employee in Patton's office. J.A. 7259. Despite this advice, Jones reported embezzlement losses of $151,578.96 for Lifeline on his personal Form 4684 for tax year 2013, several years after discovering the alleged losses. J.A. 5101. Any rational juror could find that Jones acted willfully in improperly listing these alleged losses as a casualty loss based on his communications with Patton and his office.

Finally, the jury could rely on Jones's affirmative acts to evade the payment of employment taxes as evidence of his willfulness in filing false returns for tax years 2013 through 2018. In *United States v. Abboud*, the Sixth Circuit held that "evidence that Defendants willfully violated the tax laws with respect to the payment of employees was probative as to Defendants' willfulness in connection with the failure to file a tax return and the underreporting of income." 438 F.3d 554, 582 (6th Cir. 2006); *see also United*

13

*States v. Bok*, 156 F.3d 157, 165 (2d Cir. 1998) ("[A] defendant's past taxpaying record is admissible to prove willfulness circumstantially."). Here, the government presented evidence that Jones had been committing affirmative acts of tax evasion since 2009.[2]

Based on the totality of the foregoing evidence, any rational juror could find Jones to have acted willfully in failing to report substantial rental income generated from his properties in St. Maarten and claiming improper deductions in his tax returns. The substantial amount of the unreported rental income and the fact that he reported rental income to the bank in St. Maarten, combined with actions he took that effectively concealed his beneficial ownership of the St. Maarten properties, support a reasonable inference that Jones knew his omission of the income in his tax returns was false and unlawful. The substantial size of improper deductions Jones claimed for embezzlement losses he never sustained and a divorce settlement or judgment he never paid, combined with Patton's testimony that Jones was advised not to claim the embezzlement losses, support a reasonable finding that Jones acted willfully in claiming the improper deductions. The jury's finding of willfulness is further bolstered by evidence of Jones's history evading tax obligations.

For the foregoing reasons, we conclude that sufficient evidence was presented to support Jones's convictions for violating 26 U.S.C. § 7206(1) as charged in Counts Three through Eight.

---

[2] The evidence of Jones's affirmative acts of tax evasion that preceded his filing of false individual income tax returns is discussed in greater detail in Part II.A.2 *infra*.

14

2.

Jones argues that the government presented insufficient evidence to show that, after August 14, 2014 (within the six-year limitations period),[3] Jones corruptly obstructed or endeavored to obstruct an IRS proceeding in violation of 26 U.S.C. § 7212(a), as alleged in Count One, or that he committed an affirmative act of tax evasion in violation of 26 U.S.C. § 7201, as alleged in Count Two.

Regarding Count One, an individual violates 26 U.S.C. § 7212(a) by "either 1) 'corruptly' or 'by force *or* threats of force' endeavoring to 'intimidate *or* impede'; *or* by 2) 'in any other way corruptly *or* by force or threats of force' impeding administration of the tax laws." *United States v. Bostian*, 59 F.3d 474, 477 (4th Cir. 1995) (quoting 26 U.S.C. § 7212(a)). This Court has interpreted the second clause, called the "omnibus clause," broadly to encompass multi-faceted schemes to gain an improper benefit or advantage or to evade payment of taxes. *See United States v. Mitchell*, 985 F.2d 1275, 1279 (4th Cir. 1993); *Bostian*, 59 F.3d at 478–79. Actions taken corruptly to impede the administration of tax laws need not be independently unlawful to violate § 7212(a). *Bostian*, 59 F.3d at 478–79 (citing *Mitchell*, 985 F.2d at 1278).

With respect to Count Two, "[i]n order to establish a violation of 26 U.S.C.A. § 7201, the government must prove: 1) that the defendant acted willfully; 2) that the defendant committed an affirmative act that constituted an attempted evasion of tax

---

[3] The applicable statute of limitations for both § 7201 and § 7212(a) violations is six years. *See* 26 U.S.C. § 6531(2) and (6).

15

payments; and 3) that a substantial tax deficiency existed." *United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997) (citing *United States v. Goodyear*, 649 F.2d 226, 227–28 (4th Cir. 1981)); *see also Sansone v. United States*, 380 U.S. 343, 351, 85 S. Ct. 1004, 1010, 13 L. Ed. 2d 882 (1965). A "willful attempt" to evade may be inferred from "any conduct having the likely effect of misleading or concealing." *Wilson*, 118 F.3d at 236 (quoting *Goodyear*, 649 F.2d at 228); *see also Spies v. United States*, 317 U.S. 492, 499, 63 S. Ct. 364, 368, 87 L. Ed. 418 (1943). Evidence proving willful tax evasion

> is ordinarily circumstantial, since direct proof is often unavailable. Circumstantial evidence in this context may consist of, among other things, a failure to report a substantial amount of income, a consistent pattern of underreporting large amounts of income, the spending of large amounts of cash that cannot be reconciled with the amount of reported income, or any conduct, the likely effect of which would be to mislead or to conceal.

*United States v. Thompson*, 518 F.3d 832, 850–51 (10th Cir. 2008) (quoting *United States v. Kim,* 884 F.2d 189, 192 (5th Cir.1989)).

Throughout the period between 2009 and 2019, Jones was aware that there was a substantial deficiency of employment taxes that Lifeline failed to pay and that the IRS was seeking to collect those taxes. IRS Revenue Officer Meador began attempting to collect the delinquent employment taxes in May 2009. J.A. 6231–35. Her efforts included visiting Lifeline's offices and conducting a TFRP interview with Jones. During the meeting, Meador made clear that she was attempting to collect delinquent taxes "for the first, second, and third quarter of 2008." J.A. 6242. Further, Meador testified that Jones was aware that the taxes were delinquent." *Id*. When questioned during the interview about why the

employment taxes were delinquent, Jones stated that he was not able to pay because "Medicaid and Medicare payments stopped, and that it was the high price of diesel fuel." *Id*. In June 2009, the IRS eventually assessed Jones with a TFRP, which made him liable for the unpaid taxes. J.A. 5877–80, 6251–55. Therefore, Jones was aware of the substantial tax deficiency and the IRS's efforts to collect the unpaid taxes.

Substantial evidence was presented at trial to support reasonable findings that, within the applicable limitations period, Jones took several acts to evade the payment of employment taxes the federal government sought to collect from him.

First, evidence presented at trial established that Jones directed false responses to a grand jury subpoena he received in October 2017 seeking records of his foreign bank accounts for the prior five years. J.A. 646–52, 7166–68, 7172–75. Through his attorney, Jones consistently responded that he did not have any responsive bank records to provide, even after the government clarified that he was required to retrieve responsive records from the banks. J.A. 653, 7172–75. Jones never produced responsive records. J.A. 7175. During trial, the government presented substantial documentary evidence and testimony that Jones owned or controlled at least five foreign bank accounts during the relevant period. J.A. 923–26, 6044, 6061–62, 6104–05, 6149–50, 6165–66, 6172–74, 6913–14, 6934–36, 6946, 6955–56, 6961–65, 7206–11. Any rational juror could conclude from this evidence that Jones's statements to the government were false and made intentionally and with knowledge of their falsity, and that they impeded the federal government's tax collection efforts.

17

Second, as explained in Part II.A.1 *supra*, trial evidence established that Jones was responsible for filing a series of false individual income tax returns for tax years 2013 through 2018, and that he did so willfully. Jones's ownership of significant offshore assets and receipt of rental income from properties in St. Maarten were falsely omitted from each of these returns. A rational juror could conclude from evidence of the IRS's efforts to collect the unpaid employment taxes that Jones's concealment of his foreign assets and rental income impeded the IRS's collection efforts. A rational juror could conclude that, by concealing his ownership of, and rental income from, high-value properties in St. Maarten, Jones willfully attempted to avoid payment of tax obligations that were outstanding at the time the false tax returns were filed.

At trial, the jurors were presented substantial evidence that Jones acted willfully in attempting to evade payment of taxes and acted corruptly in impeding the federal government's collection efforts. Evidence that Jones acted willfully and corruptly after August 2014 (within the limitations period) included actions he took before August 2014 to avoid paying the tax liability and to impede the government's collection efforts.

Shortly after the IRS began collection efforts in May 2009 and assessed Jones with a penalty in June 2009, Jones transferred properties he owned in Virginia out of his name. In connection with these transactions, Jones caused a fraudulent transfer of $599,920 to Marine Holding, J.A. 7036–38, and provided false documentation that Marine Holding acquired a $400,000 loan Jones claimed to owe to Dana Mecum, J.A. 6377–82, which

18

Mecum testified never existed, J.A. 6712–13.[4] The documentation listed a false address for Marine Holding; contained a forged signature for Tony Cabeceira, which Cabeceira testified was a forgery and misspelled his name; and identified Cabeceira as Marine Holding's chief financial officer, which Cabeceira testified he was not. J.A. 6713–16, 6740, 6760, 6803, 6807–13, 7053–55, 7151–61. Marine Holding's CEO, Luis Gioia, testified that Marine Holding was not involved in any transfers of Jones's Virginia properties, and he never signed or authorized any documents for these transactions. J.A. 7050–57. Jones provided false documentation of the Bell Road and Aspen Avenue property transactions to Meador in response to her collection efforts and, later, to Special Agents of IRS-Criminal Investigation during their criminal investigation. J.A. 608–28, 1128–57, 1144–50, 6812–13, 7053–55.

In October 2010, Jones completed and gave Meador an IRS Form 433-A in which he omitted his ownership of the luxury properties in St. Maarten and the rental income he received from the properties, as well as his ownership of high-value cars and valuable commercial property in Virginia. J.A. 5895–900. Trial evidence established that these omissions were false. A statement of affairs Jones provided to a St. Maarten bank in May 2010 reflected assets totaling more than $14 million, including several properties in St. Maarten generating substantial rental income, the holdings companies through which Jones owned these properties, and 30 cars with a total value of over $1.8 million. J.A. 1313–16.

---

[4] Mecum, an auto dealer, testified that a wire transfer he made to Jones was not a loan but was instead part of a payment for cars Mecum sold for Jones. J.A. 6710–13.

19

As explained in Part II.A.1 *supra*, Jones took actions that tended to conceal the fact that he was the beneficial owner of properties and bank accounts in St. Maarten. In or around 2007, Jones hired a nominee company director to complete all documentation and issue bearer shares for companies through which Jones owned the St. Maarten properties, which hid Jones's ownership of the companies and properties while he retained control and collected rent. J.A. 6915.

In addition, while testifying at his trial, Jones continued to deny ownership of the companies, properties, and bank accounts in St. Maarten, claimed that he paid Lifeline's employment taxes, denied owning a collection of high-value cars, and denied signing the documents reflecting his ownership of various assets, J.A. 7677–78, 7685, 7689, 7693–95, 7701–03, all in the face of substantial testimony and documentary evidence to the contrary, *see* J.A. 1313–16, 1666–69, 6061, 6766–69, 6913–14, 6946–47, 6952. Considering all of the documentary evidence and testimony from other witnesses that tended to disprove Jones's testimony, a rational juror could conclude that Jones's testimony was false and given intentionally to impede the administration of tax laws.

In its totality, the foregoing evidence reflects a pattern of deceptive, clandestine, and obstructive conduct by Jones in response to the IRS's efforts to collect a tax liability for which he was responsible. Any rational juror could conclude from this evidence that Jones acted willfully and corruptly in support of a scheme to evade payment of Lifeline's unpaid employment taxes. We conclude, therefore, that the trial evidence was sufficient to support Jones's conviction on Counts One and Two of the superseding indictment.

III.

Next, Jones challenges his sentence as procedurally unreasonable, arguing that the district court improperly increased his offense level pursuant to U.S.S.G. § 2T1.1(b)(1). "In reviewing whether a sentencing court properly applied the Guidelines, this Court 'reviews the [sentencing] court's factual findings for clear error and its legal conclusions *de novo*.'" *United States v. Henderson*, 88 F.4th 534, 536 (4th Cir. 2023) (quoting *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006)). "Improper calculation of [the] advisory sentencing range under the Guidelines constitutes significant procedural error, making [the] sentence procedurally unreasonable" and subject to vacatur. *United States v. Clay*, 627 F.3d 959, 970 (4th Cir. 2010). "The government bears the burden of establishing the applicability of a sentencing enhancement by the preponderance of the evidence." *Henderson*, 88 F.4th at 536.

To determine Jones's Sentencing Guidelines range, the district court grouped all counts of conviction pursuant to U.S.S.G. § 3D1.2(b). J.A. 7919. The district court began with a base offense level of 22 pursuant to §§ 2T1.1(a)(1) and 2T4.1(I) because the offenses involved tax evasion and the filing of false tax returns, and the total tax loss, which included the unpaid employment taxes and the fraudulent deductions, was more than $1.5 million but not more than $3.5 million. J.A. 7832, 7919. Over Jones's objection, the district court then applied a two-level increase pursuant to § 2T1.1(b)(2) based upon a finding that the offenses involved sophisticated means. J.A. 7832–33. The district court also applied a two-level increase pursuant to § 2T1.1(b)(1) over Jones's objection, having found that Jones failed to report and pay taxes withheld from Lifeline employees and instead "ke[pt] that

21

money for himself." J.A. 7833–34. Additionally, the district court applied a two-level increase pursuant to § 3C1.1 for obstruction of justice and a two-level decrease pursuant to § 4C1.1(a) because Jones was a zero-point offender who satisfied the criteria for that provision. J.A. 7834–35. The resultant total offense level was 26. J.A. 7835. Because Jones's criminal history category was I, his Sentencing Guidelines range was determined to be 63 to 78 months of imprisonment. *Id.* In consideration of the 18 U.S.C. § 3553(a) factors, the district court ultimately imposed a prison sentence of 78 months, comprised of concurrent 36-month sentences for Counts One and Three through Eight and a consecutive 42-month sentence for Count Two. J.A. 7854.

Jones argues that the district court erred in imposing the two-level adjustment under U.S.S.G. § 2T1.1(b)(1).

Section 2T1.1(b)(1) provides a two-level increase in a defendant's offense level "[i]f the defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity." U.S.S.G. § 2T1.1(b)(1). The Application Notes define "[c]riminal activity" as "any conduct constituting a criminal offense under federal, state, local, or foreign law." U.S.S.G. § 2T1.1 cmt. 4. The Background of § 2T1.1 states that "[f]ailure to report criminally derived income is included as a factor for deterrence purposes."

Here, the district court applied the § 2T1.1(b)(1) enhancement based on its determination that "[i]t was plainly criminal activity for the defendant to take—to withhold the moneys from his employees' salaries and never pay that to the government[,]" and that Jones kept the funds he withheld for himself. J.A. 7834. The district court's factual findings

22

are supported by a preponderance of the evidence adduced at trial. During all four quarters of 2008 and 2009, Jones withheld more than $10,000 from wages earned by employees of Lifeline as employment taxes but never paid these amounts to the government. It was not clear error for the district court to conclude that Jones kept more than $10,000 of these funds for himself. The funds Jones withheld totaled $186,519. J.A. 7913.

Furthermore, the district court did not err in concluding that Jones engaged in "criminal activity" under § 2T1.1(b)(1) when he withheld funds from wages of Lifeline's employees and retained those funds for himself instead of holding them in trust for the government and paying them over. This precise conduct constitutes a felony under the Internal Revenue Code and is punishable by imprisonment and fine:

> Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

26 U.S.C. § 7202.[5] As the president and owner of Lifeline, Jones was a "person" required to collect employment taxes from the wages of Lifeline employees, hold them in trust for

---

[5] We recognize that Jones was neither charged nor convicted of any 26 U.S.C. § 7202 violation, but "criminal activity" for purposes of U.S.S.G. § 2T1.1(b)(1) is not restricted to crimes of which the defendant has been convicted. *See* U.S.S.G § 1B1.3(a) (providing, as a general matter, that "specific offense characteristics . . . in Chapter Two . . . shall be determined" based, in part, on "all acts and omissions" by the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;" "all harm that resulted from" or "was the object of" those "acts and omissions;" and "any other information specified in the applicable guideline."); *United States v. McKinney*, 686 (Continued)

the United States, and pay them over to the government. *See* 26 U.S.C. § 7343 (defining "person" to include "an officer . . . of a corporation . . . , who as such officer . . . is under a duty to perform the act in respect of which the violation occurs"); 26 U.S.C. § 3402 (requiring employers who pay wages to "deduct and withhold" taxes from those wages); 26 U.S.C. § 7501 (requiring that withheld taxes to be held "in trust for the United States"). Jones's willful retention of the taxes he withheld and failure to pay them over to the government constituted a criminal violation of 26 U.S.C. § 7202 and therefore "criminal activity" under U.S.S.G. § 2T1.1(b)(1). The money Jones criminally withheld from employees of Lifeline and retained was "income" that he "failed to report" to the IRS. U.S.S.G. § 2T1.1(b)(1). We conclude, therefore, that the district court did not err in applying the two-level enhancement in § 2T1.1(b)(1).

The district court found support for its application of § 2T1.1(b)(1) in *United States v. Heard*, 709 F.3d 413 (5th Cir. 2013). In *Heard*, the defendant was convicted of a conspiracy to defraud the United States and two counts of tax evasion. 709 F.3d at 418. The Fifth Circuit affirmed application of § 2T1.1(b)(1) based on the defendant having "stole[n] from the IRS by withholding in excess of $10,000 in employment taxes . . . and

---

F.3d 432, 434–37 (7th Cir. 2012) (upholding enhancement for defendant's failure to report income from uncharged mortgage fraud); *United States v. Barakat*, 130 F.3d 1448, 1453 (11th Cir. 1997) ("Although the jury found that the government had not proven the mail fraud conspiracy count beyond a reasonable doubt, the district court did not clearly err in finding that a preponderance of the evidence proved Barakat had received the unreported income from criminal activity.").When Sentencing Guidelines provisions are restricted to offenses of conviction, they use exactly that term: "offense of conviction."

not paying the money to the IRS." *Heard*, 709 F.3d at 423. The § 2T1.1(b)(1) enhancement in the instant case is founded upon precisely the same conduct.

Jones offers several arguments in an effort to distinguish *Heard*. He argues that "the criminal activity underlying Mr. Heard's § 2T1.1(b)(1) enhancement was not tax evasion but conspiracy to defraud the United States," i.e., "a separate offense from that on which the defendant faced sentencing under § 2T1.1." Appellant Br. 24. In the instant case, Jones argues, his retention of employment taxes—the conduct on which his § 2T1.1(b)(1) enhancement is based—is part of the same tax evasion upon which his base offense level was determined pursuant to §§ 2T1.1(a)(1) and 2T4.1. *Id.* at 25. Because the stolen employment taxes treated as "income" under § 2T1.1(b)(1) were also counted as part of the total tax loss used to determine his base offense level, Jones argues that applying the two-level enhancement in § 2T1.1(b)(1) "improperly double counts the value of the unpaid employee withholding[.]" *Id.* at 27.

We are not persuaded by any of these arguments. First, the crimes for which Jones was charged and convicted are not the same crime the district court identified as grounds for applying § 2T1.1(b)(1). Jones was convicted of corruptly endeavoring to obstruct the IRS, in violation of 26 U.S.C. § 7212(a); tax evasion, in violation of 26 U.S.C. § 7291; and six counts of filing false tax returns, in violation of 16 U.S.C. §7206(1). Although the district court did not specifically cite any statute when it applied § 2T1.1(b)(1), the crime described by the court is clearly reflected in 26 U.S.C. § 7202—that is, the defendant's failure to pay over employment taxes he was required by statute to collect and account for as president and owner of Lifeline.

25

Second, as Jones acknowledges, double counting is not generally proscribed by the Sentencing Guidelines. *See United States v. Hampton,* 628 F.3d 654, 664 (4th Cir. 2010) ("[T]here is a presumption that double counting is proper where not expressly prohibited by the [G]uidelines."). And there is nothing in the text of § 2T1.1(b)(1) or the broader structure of § 2T1.1 to suggest that the unreported and criminally sourced income that supports a § 2T1.1(b)(1) enhancement cannot include tax losses. What matters for purposes of applying § 2T1.1(b)(1) is that the money at issue is "income," that it exceeded $10,000 in any year, that it was derived from "criminal activity," and that the defendant "failed to report" it or "correctly identify" its source. The two-level enhancement imposed when these conditions are met is intended to deter drawing substantial "income" "from criminal activity." In this way, the § 2T1.1(b)(1) enhancement serves a purpose separate from that served by the tax loss assessed in §§ 2T1.1(a)(1) and 2T4.1. Those sections primarily assess culpability based on loss to the government and, secondarily, gain to the defendant, irrespective of whether the gain was criminally derived.[6] We are not persuaded that it is improper to double count amounts of money that a defendant both denied the government as tax losses and, in the same instance, criminally procured as income for himself. *See Heard*, 709 F.3d at 424 (rejecting defendant's double-counting argument).

---

[6] *See* U.S.S.G. §§ 2T1.1, Background ("This guideline relies most heavily on the amount of loss that was the object of the offense. Tax offenses, in and of themselves, are serious offenses; however, a greater tax loss is obviously more harmful to the Treasury and more serious than a smaller one with otherwise similar characteristics. Furthermore, as the potential benefit from the offense increases, the sanction necessary to deter also increases.").

Jones is mistaken in his argument that, under our reading of § 2T1.1(b)(1), "any case with a tax loss of more than $10,000 that could be considered 'income' would merit an enhancement." Appellant Br. 27. Only unreported "*income* exceeding $10,000 in any year *from criminal activity*" merits the two-level increase. U.S.S.G. § 2T1.1(b)(1) (emphasis added). Under our reading of § 2T1.1(b)(1), a defendant who only evades payment of taxes by retaining income from lawful activity would not receive this enhancement. Here, in contrast, the § 2T1.1(b)(1) enhancement was predicated upon income Jones obtained criminally by taking it from Lifeline employees' wages and keeping it for himself rather than causing Lifeline to hold it in trust and pay it over to the federal government. We agree with the district court: "This is not a case where it's a simple failure of Mr. Jones to pay his own taxes. That would not implicate 2T1.1(b)(1) . . . . This is his failure to pay other people's taxes and keep that money for himself, and that implicates 2T1.1(b)(1)." J.A. 7834 (citing *United States v. Kearney*, No. CR 19-2848 JB, 2024 WL 1112184 (D.N.M. Mar. 14, 2024)). The "criminal activity" through which Jones stole employment taxes is a characteristic of his offense conduct that makes it more culpable than simple evasion of taxes due on lawfully obtained income, and it is appropriate for the two-level increase provided in § 2T1.1(b)(1).

In *Heard*, the Fifth Circuit rejected the defendant's argument that the employment taxes he stole from the IRS was "legitimate income" he earned from his security business. 709 F.3d at 423–24. The stolen tax money was "derived" from a criminal conspiracy through which "Heard's companies failed to pay to the IRS millions of dollars in employment taxes." *Id.* at 424. "[T]he illegality of the funds [was] demonstrated by

27

Heard's other tax convictions, which concern interference with the IRS's collection of these employment taxes." *Id*. Similarly here, the "income" at issue was employment taxes Jones derived from the crime of withholding it from Lifeline employees' wages and keeping it for himself instead of holding it in trust for the federal government and paying it over. From there, like Heard, Jones interfered with the IRS's collection of the unpaid taxes and criminally continued to evade payment. The portion of the total tax loss in this case attributable to Jones's criminal failure to pay over employment taxes justified application of § 2T1.1(b)(1), as long as it "exceed[ed] $10,000 in any year[,]" which it did.

Jones argues, in the alternative, that the rule of lenity should apply and forbid imposing § 2T1.1(b)(1) enhancement in this case. The rule of lenity "favor[s] a more lenient interpretation of a criminal statute 'when, after consulting traditional canons of statutory construction, we are left with an *ambiguous* statute.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 16, 131 S. Ct. 1325, 1336, 179 L. Ed. 2d 379 (2011) (quoting *United States v. Shabani,* 513 U.S. 10, 17, 115 S. Ct. 382, 130 L. Ed. 2d 225 (1994)) (emphasis added). This rule "applies to the interpretation of the Sentencing Guidelines in the same manner as it applies to the interpretation of criminal statutes." *United States v. Blackburn*, 940 F.2d 107, 109 (4th Cir. 1991). But we perceive no ambiguity in § 2T1.1(b)(1). It plainly provides for a two-level enhancement in tax evasion cases where the defendant has "failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity," as Jones failed to do in this case. Thus, in this case, § 2T1.1(b)(1) applies, and the rule of lenity does not.

28

IV.

The parties agree that a discrepancy between Jones's orally pronounced sentence of supervised release and his written judgment constitutes a sentencing error under *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), requiring a remand of the case for resentencing. Rule 43(a)(3) of the Federal Rules of Criminal Procedure requires a criminal defendant to be present at sentencing. "Because a defendant has a right to be present when he is sentenced, a district court must orally pronounce all non-mandatory conditions of supervised release at the sentencing hearing." *United States v. Singletary*, 984 F.3d at 344 (4th Cir. 2021) (citing *Rogers*, 961 F.3d at 296–99). This requirement "is not a meaningless formality[.]" *Id.* at 346 (quoting *Rogers*, 961 F.3d at 300). It is "a critical part of the defendant's right to be present at sentencing[,]" *id.* (quoting *Rogers*, 961 F.3d at 300) (citation modified), because the defendant can only have an opportunity to object to a discretionary condition of supervised release if she or he is present when the condition is imposed, *id.* (citing *Rogers*, 961 F.3d at 298). A district court errs when it fails to pronounce orally at sentencing all discretionary supervised release conditions subsequently imposed in the written judgment. *Rogers*, 961 F.3d at 300. A *Rogers* error also occurs when there is "a material discrepancy between a discretionary condition as pronounced and as detailed in a written judgment . . . ." *United States v. Mathis*, 103 F.4th 193, 197 (4th Cir. 2024) (citation omitted). For a material discrepancy constituting a *Rogers-Singletary* error, there is "only one option—vacate and remand for a full resentencing." *Id.* at 199–200.

Here, both parties agree that there is at least one material discrepancy between the district court's oral pronouncement of discretionary conditions of supervised release at

29

sentencing and its written judgment. During Jones's sentencing, the district court orally pronounced as a discretionary condition of supervised release that Jones must "submit to warrantless search and seizure to ensure compliance with these conditions of your person, your home, your vehicle, your residence, your property, upon reasonable suspicion that the probation officer believes there is a violation of the terms of this supervision." J.A. 7858–59. This condition is listed in the written judgment, but the judgment also requires Jones to "warn any other occupants that the premises may be subject to searches pursuant to this condition." J.A. 7865. Specifically, the district court did not orally pronounce this condition at sentencing. This omission constitutes an error under *Rogers* and *Singletary* that warrants resentencing.

Indeed, the discrepancy between the supervised release conditions as orally pronounced and those listed in the written judgment in this case is similar to that examined in *Mathis*. In that case, the district court orally imposed a warrantless search requirement on a defendant at the sentencing hearing and then added an additional requirement in the written judgment that the defendant "warn other occupants that the premises may be subject to searches[.]" *Mathis*, 103 F.4th at 198. On appeal, this Court concluded that the added warning requirement was "inconsistent with the oral pronouncement and constitutes reversible error . . . ." Bound by *Rogers* and *Singletary*, this Court recognized that the Court's "only option" was to "vacate and remand for a full resentencing." *Id*. at 200. Our precedents mandate the same outcome here.

We note that one material discrepancy between discretionary supervised release conditions as orally pronounced and as written in the judgment is sufficient to vacate the

sentence and remand for resentencing. *See id.* at 198 ("[U]nder our *Rogers-Singletary* jurisprudence, one rotten apple spoils the whole barrel."); *Singletary*, 984 F.3d at 346 (declining to address additional claims of sentencing error after detecting a reversible sentencing error). Therefore, we need not examine the other potential grounds for *Rogers* error asserted by Jones in this appeal.

For the reasons stated, Jones's sentence shall be vacated and the case remanded to the district court for resentencing.

V.

For the reasons given above, the judgment of the district court is affirmed in part and vacated in part, and the case is remanded for resentencing.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*